PEOPLE v MISSOURI

PEOPLE v CHARLES BLOUNT

Docket Nos. 77-4222, 77-4224. Submitted April 2, 1980, at Detroit.—
Decided July 25, 1980.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 21 Am Jur 2d, Criminal Law § 251 *et seq.*
[2] 4 Am Jur 2d, Appeal and Error § 62.
   21 Am Jur 2d, Criminal Law § 241 *et seq.*
[4] 21 Am Jur 2d, Criminal Law § 252.
   Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.
[5] 21 Am Jur 2d, Criminal Law § 253.
[6, 7] 21 Am Jur 2d, Criminal Law §§ 241, 242.
[8] 58 Am Jur 2d, New Trial § 200.
[9, 13-15] 58 Am Jur 2d, New Trial § 56 *et seq.*
   75 Am Jur 2d, Trial § 259.
   Propriety and effect of presecuring attorney's argument to jury
    indicating his belief or knowledge as to guilt of accused. 50
    ALR2d 766.
[10] 21 Am Jur 2d, Criminal Law § 223.
[11] 58 Am Jur 2d, New Trial § 58.
[12] 29 Am Jur 2d, Evidence § 738 *et seq.*
[16] 41 Am Jur 2d, Indictments and Informations § 161.
   Right of accused to bill of particulars. 5 ALR2d 444.
[17] 5 Am Jur 2d, Appeal and Error § 774.
[18] 41 Am Jur 2d, Indictments and Informations § 170.
[19] 5 Am Jur 2d, Appeal and Error § 744.
[20] 29 Am Jur 2d, Evidence §§ 738 *et seq.,* 749.
[21] 29 Am Jur 2d, Evidence § 743 *et seq.*
[22] 29 Am Jur 2d, Evidence § 251 *et seq.*
[23] 58 Am Jur 2d, New Trial § 51.
[24] 47 Am Jur 2d, Jury § 200.
[25] 47 Am Jur 2d, Jury § 127.
[26] 47 Am Jur 2d, Jury § 125.
[27] 16 Am Jur 2d, Conspiracy § 13.
[28] 16 Am Jur 2d, Conspiracy § 10.
[29] 41 Am Jur 2d, Indictments and Informations § 264.
[30] 21 Am Jur 2d, Criminal Law § 442.
[31, 33] 75 Am Jur 2d, Trial § 17 *et seq.*
[32] 75 Am Jur 2d, Trial § 20.
[34] 75 Am Jur 2d, Trial §§ 17 *et seq.,* 30.

Milton Missouri and Charles Blount were convicted of conspiracy to deliver heroin, and Charles Blount was also convicted of conspiracy to possess heroin with intent to deliver, Recorder's Court of Detroit, John H. Hausner, J. They appeal, alleging 1) that they were denied their right to a speedy trial, 2) that they were denied due process of law by lack of a speedy appeal, 3) that numerous instances of prosecutorial misconduct denied their right to a fair trial, 4) that the trial court erred in denying their motion for a bill of particulars, 5) that the trial court erred by admitting evidence obtained by participant monitoring without a search warrant, 6) that the trial court erred by admitting the preliminary examination testimony of a witness who died prior to trial, 7) that the prosecutor failed to establish a proper chain of custody as part of the foundation for the introduction of certain evidence, 8) that the trial judge's conduct during jury voir dire breached his duty of impartiality, thereby denying them a fair trial, 9) that the trial court erred by impaneling more than 14 jurors, 10) that evidence produced at trial failed to show that they had agreed to commit a substantive offense, and 11) that there was an impermissible variance between the proofs offered at trial and one of the counts of the indictment. Milton Missouri in his appeal additionally alleged that the examining magistrate abused his discretion in binding him over for trial since he was never identified at the preliminary examination as the "Milton Missouri" who did the acts in question, and that the trial court erred in denying his motion for a separate trial. The cases were consolidated on appeal. *Held:*

1. Defendants were not denied their right to a speedy trial. Length of delay is not determinative of a denial of a speedy trial claim, but is the triggering mechanism for considering the issue. The complexity of the case combined with defense counsel's pretrial tactics, the prosecutor's interlocutory appeal from the trial court's order to suppress evidence, defendants' application for leave to appeal to the Supreme Court, and defendant Blount's departure from the state in violation of a court order contributed to the delay. Defendants' demand for a speedy trial was made 30 months following their indictment and leads to the conclusion that they did not experience serious deprivation of their rights. Further, defendants showed no serious prejudice to themselves or their defense.

2. Defendants were not denied due process of law by delay in the consideration of their appeal. No showing was made that the merits of the appeal were affected by the delay. Such a delay does not automatically entitle them to a new trial.

3. Any prosecutorial misconduct was not so prejudicial as to

cause the jury to suspend its own power of judgment in considering the matter before it and did not, either singularly or in combination, deny defendants a fair trial.

4. Defendants were charged under the statutory short form of indictment, and, thus, the trial court erred in denying their motion for an order compelling the prosecution to prepare a bill of particulars setting up specifically the nature of the offense charged. However, the trial court conducted a hearing to clarify the charges, correcting any error.

5. Defendants' allegation of error regarding evidence obtained during participant monitoring was raised before on interlocutory appeal where a ruling adverse to defendants obtained. This order became the law of the case, and further consideration of the issue is declined.

6. Defendants' counsel was given an adequate opportunity to cross-examine a witness at the preliminary examination. Thus, the testimony was available for introduction into evidence at trial where the witness was unavailable because of his death.

7. No chain of custody problem exists since the substance in question was never offered or admitted into evidence. In reality, the issue is addressed to the relevance of a witness's testimony regarding the transfer of the substance. The record indicates that such testimony was properly admitted.

8. The trial judge did not breach his duty of impartiality in attempting to elicit a juror's true feeling as to whether he could judge the case impartially. The judge did not express his own opinion on the merits of the issue, nor did he persist in commenting about the matter.

9. The trial judge did not abuse his discretion by impaneling 15 jurors to hear the trial. While the number of jurors is limited to 14 by statute, a judge is permitted to impanel 13 or more jurors by court rule. The court rule prevails over the statute.

10. The evidence presented was sufficient to find intent to agree to commit the underlying offense as to both defendants beyond a reasonable doubt.

11. Any variance between the proofs offered at trial and Count I of the indictment in no way prejudiced defendants.

12. Defendant Missouri chose not to participate in a special identification procedure to resolve the issue of discrepancies in the preliminary examination identification, thereby relinquishing his right to pursue the issue on appeal.

13. The trial judge did not abuse his discretion in denying defendant Missouri's motion for a separate trial. There was

significant overlapping of issues and evidence, and no actual prejudice was shown.

Affirmed.

1. APPEAL — CRIMINAL LAW — RIGHT TO A SPEEDY TRIAL — TEST — CONSTITUTIONAL LAW.

The test upon review of whether a defendant has been accorded a speedy trial generally requires balancing on an ad hoc basis the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to the defendant.

2. APPEAL — CRIMINAL LAW — RIGHT TO A SPEEDY TRIAL — LENGTH OF DELAY — PRESUMPTION OF PREJUDICE.

The length of a delay in a criminal defendant's trial is not determinative on appeal of a denial of speedy trial claim, but is the triggering mechanism for considering the issue; until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the reason for the delay, the defendant's assertion of his right to a speedy trial, and actual prejudice to the defendant.

3. CRIMINAL LAW — DELAY IN TRIAL — COMPLEXITY OF CASE.

A greater period of delay in a criminal defendant's trial can be tolerated in a multiple-count, complex conspiracy case than for an ordinary street crime.

4. APPEAL — CRIMINAL LAW — RIGHT TO A SPEEDY TRIAL — LEGITIMATE REASONS FOR DELAY.

Periods of delay in a criminal defendant's trial which can be directly attributed to his counsel's pretrial tactics, which are due to his departure from the state in violation of a court order, or which represent time expended by a prosecutor to pursue an interlocutory appeal from an order of a trial court and a defendant's application for leave to appeal to the Supreme Court should not be considered on appeal in derogation of a defendant's right to a speedy trial.

5. APPEAL — CRIMINAL LAW — RIGHT TO A SPEEDY TRIAL — ASSERTION OF RIGHT — STANDARD OF REVIEW.

A defendant in a criminal case does not waive his right to a speedy trial by his failure to assert it; however, such failure is a factor to be considered on appeal in determining if the right has been denied.

6. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Pʀᴇᴛʀɪᴀʟ Dᴇʟᴀʏꜱ — Rɪɢʜᴛ ᴛᴏ ᴀ Sᴘᴇᴇᴅʏ Tʀɪᴀʟ — Pʀᴇᴊᴜᴅɪᴄᴇ — Cᴏɴꜱᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ.

Two kinds of prejudice may accrue to a defendant as a result of pretrial delay which may lead to a denial of his constitutional right to a speedy trial: prejudice to his person in the form of oppressive pretrial incarceration and excessive anxiety and concern, and prejudice to his defense caused by loss of evidence or unavailability of key witnesses.

7. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Dᴇʟᴀʏ ɪɴ Tʀɪᴀʟ — Mᴇᴍᴏʀɪᴇꜱ ᴏғ Wɪᴛɴᴇꜱꜱᴇꜱ — Pʀᴇᴊᴜᴅɪᴄᴇ.

Diminution of a witness's memory is a factor in considering the prejudice to an accused's defense because of a delay in his trial.

8. Aᴘᴘᴇᴀʟ — Dᴇʟᴀʏ ɪɴ Rᴇᴠɪᴇᴡ — Rᴇᴍᴇᴅʏ.

Delay in appellate review does not automatically entitle a defendant to a new trial; the remedy for a dilatory review is the review itself.

9. Aᴘᴘᴇᴀʟ — Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Pʀᴏꜱᴇᴄᴜᴛᴏʀɪᴀʟ Mɪꜱᴄᴏɴᴅᴜᴄᴛ — Iꜱᴏ- ʟᴀᴛᴇᴅ Rᴇᴍᴀʀᴋꜱ — Gʀᴏᴜɴᴅꜱ ғᴏʀ Rᴇᴠᴇʀꜱᴀʟ.

A well-tried, vigorously-argued case ought not to be overturned due to isolated improper remarks by a prosecutor which could have been cured during trial had an objection been lodged and where such behavior by a prosecutor is not so prejudicial as to cause a jury to suspend its own power of judgment in considering the matter before it.

10. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Rɪɢʜᴛ ᴛᴏ ᴀ Fᴀɪʀ Tʀɪᴀʟ.

A defendant is entitled to a fair trial, not a perfect trial.

11. Pʀᴏꜱᴇᴄᴜᴛɪɴɢ Aᴛᴛᴏʀɴᴇʏꜱ — Oᴘᴇɴɪɴɢ Rᴇᴍᴀʀᴋꜱ — Rᴇғᴇʀᴇɴᴄᴇ ᴛᴏ Cᴏɴꜱᴘɪʀᴀᴛᴏʀɪᴀʟ Gʀᴏᴜᴘꜱ — Eᴠɪᴅᴇɴᴄᴇ — Cʀɪᴍɪɴᴀʟ Lᴀᴡ.

A prosecutor would be justified in using a term during his opening remarks which refers to defendants in a case as being members of a conspiratorial group where the evidence which he intends to introduce tends to show the existence of such a conspiracy, absent a ruling by the trial court proscribing the utilization of such a term.

12. Pʀᴏꜱᴇᴄᴜᴛɪɴɢ Aᴛᴛᴏʀɴᴇʏꜱ — Eꜱᴛᴀʙʟɪꜱʜᴍᴇɴᴛ ᴏғ Fᴏᴜɴᴅᴀᴛɪᴏɴ Fᴀᴄᴛꜱ — Gʀᴏᴜɴᴅꜱ ғᴏʀ Mɪꜱᴄᴏɴᴅᴜᴄᴛ.

A prosecutor does not engage in misconduct in establishing foundational facts necessary to support the testimony of his forthcoming witness, especially where those facts have been established previously by stipulation of the parties.

13. PROSECUTING ATTORNEYS — REFERENCE TO INADMISSIBLE EVIDENCE — ACTUAL PREJUDICE — GROUNDS FOR REVERSAL.

A prosecutor's reference to inadmissible evidence in an attempt to establish a chain of custody does not constitute reversible error absent any actual prejudice to a defendant.

14. PROSECUTING ATTORNEYS — GOOD-FAITH EFFORTS TO ADMIT EVIDENCE — PROSECUTORIAL MISCONDUCT — ACTUAL PREJUDICE.

Prosecutorial misconduct cannot be predicated upon good-faith efforts to admit evidence, and a reversal will not obtain absent actual prejudice to a defendant.

15. PROSECUTING ATTORNEYS — CITATION OF CASE NAME AS AUTHORITY — PROPRIETY OF CONDUCT.

A prosecutor's mentioning of a case name as authority for continued questioning of a witness is not improper where he is not trying to usurp the role relegated to the trial judge and where he was correct in his reliance on that legal authority.

16. INDICTMENT AND INFORMATION — SHORT FORM OF INDICTMENT — FAILURE TO FILE BILL OF PARTICULARS — PROSECUTING ATTORNEYS — STATUTES.

Failure of a prosecutor to file a bill of particulars setting up specifically the nature of the offense charged upon seasonable request by a defendant constitutes error where the defendant has been charged under a statutory short form of indictment (MCL 767.44; MSA 28.984).

17. INDICTMENT AND INFORMATION — LONG FORM OF INDICTMENT — DENIAL OF REQUEST FOR BILL OF PARTICULARS — APPEAL — STANDARD OF REVIEW.

A denial of a request for the filing of a bill of particulars setting up specifically the nature of the offense charged where a common law long form of indictment is used is reviewable only where an abuse of discretion is shown.

18. INDICTMENT AND INFORMATION — BILL OF PARTICULARS — ALTERNATIVE NOTIFICATION OF PROSECUTOR'S CLAIMS.

Failure by a trial court to grant a defendant's request for a bill of particulars setting up specifically the nature of the offense charged does not constitute reversible error where a preliminary examination in which the accused and his counsel were present and participated was conducted prior to the request for the bill of particulars and where the defendant was given detailed information of the prosecutor's claims.

19. APPEAL — LAW OF THE CASE.

A legal question which has been raised in one appeal may not be raised again in a subsequent appeal after a proceeding has been held on remand to the lower court.

20. CRIMINAL LAW — CRIMINAL PROCEDURE — INTRODUCTION OF PRIOR RECORDED TESTIMONY — RIGHT TO CROSS-EXAMINATION AND CONFRONTATION — STATUTES.

Michigan criminal procedure permits the introduction of prior recorded testimony in accordance with generally accepted rules of evidence under appropriate circumstances, but where a defendant has been effectively denied his rights of cross-examination and confrontation at a preliminary examination, testimony there taken may not be introduced at trial (MCL 768.26; MSA 28.1049).

21. CRIMINAL LAW — CRIMINAL PROCEDURE — INTRODUCTION OF PRIOR RECORDED TESTIMONY — ADEQUATE OPPORTUNITY TO CROSS-EXAMINE.

Testimony taken at a preliminary examination in a criminal case may be introduced into evidence at an ensuing trial where the witness subsequently becomes unavailable through death and where the adverse party's attorney had an adequate opportunity to cross-examine the witness at the preliminary examination and either did so or chose not to do so.

22. EVIDENCE — CHAIN OF CUSTODY — RELEVANCE OF TESTIMONY.

It is not necessary to establish a proper chain of custody of a substance where such substance is never offered or admitted into evidence; however, testimony regarding the transfer of the substance may be admitted where relevant.

23. CRIMINAL LAW — TRIAL — JUDICIAL CONDUCT — PREVENTION OF FAIR TRIAL — REMEDY.

Reversal is mandated in a criminal trial where a trial judge's conduct prevents a defendant from obtaining a fair trial.

24. TRIAL — JUDICIAL DUTY OF IMPARTIALITY — QUESTIONING JURORS.

A trial judge does not breach his duty of impartiality where he questions a juror in an attempt to elicit the juror's true feeling as to whether he could judge a case impartially and where the judge does not express his own opinions on the merits of the issue nor persist in commenting on the matter.

25. CRIMINAL LAW — TRIAL — IMPANELING OF JURORS — COURT RULES.

A trial judge in a criminal case does not abuse his discretion by impaneling 15 jurors (GCR 1963, 511.2).

26. CRIMINAL LAW — TRIAL — IMPANELING OF JURORS — COURT
RULES — STATUTES — CONSTITUTION.

The court rule which permits the impaneling in a criminal trial
of 13 or more jurors without setting a limit on the maximum
number prevails over a statutory limitation since the Supreme
Court has the power to formulate and alter matters of judicial
practice and procedure (Const 1963, art 6, § 5, MCL 768.18[1];
MSA 28.1041[1], GCR 1963, 511.2).

27. CONSPIRACY — INTENT TO CONSPIRE — INTENT TO COMMIT SUB-
STANTIVE OFFENSE.

Proof of parties' intent to conspire and intent to accomplish the
underlying substantive offense must be made for a conspiracy
conviction to lie.

28. CONSPIRACY — PROOF OF AGREEMENT — CIRCUMSTANTIAL EVI-
DENCE.

Direct proof of an agreement to commit a crime is not required to
show conspiracy, nor is it necessary that a formal agreement be
proven; it is sufficient if the circumstances, acts, and conduct of
the parties establish an agreement in fact, and such agreement
may be established by circumstantial evidence.

29. CONSPIRACY — VARIANCE BETWEEN INDICTMENTS AND PROOFS —
CONVICTIONS.

A conviction for conspiracy may stand where an indictment
charged the defendants with a single conspiracy and a number
of separate and distinct conspiracies were proved at trial.

30. APPEAL — WAIVER OF DEFICIENCY IN PRETRIAL PROCEDURES —
PRESERVATION FOR APPEAL.

A defense decision not to participate in a lineup ordered by a
trial court to cure a deficiency raised by a defendant with
regard to pretrial identification procedures during a prelimi-
nary examination constitutes a waiver of the deficiency and a
relinquishment of the right to raise the issue on appeal.

31. CRIMINAL LAW — JOINT TRIALS — JUDICIAL DISCRETION — STAT-
UTES.

The decision whether codefendants in a criminal case will be
tried separately or jointly is within the discretion of the trial
judge (MCL 768.5; MSA 28.1028).

32. CRIMINAL LAW — JOINT TRIALS — SEPARATE TRIALS — SEPARATE
UNRELATED OFFENSES.

Separate trials should be granted defendants in a criminal case
where they are tried jointly on a similar charge and, in addi-
tion, one of the defendants is also charged with a separate

offense which arises out of a transaction totally unrelated to the event leading to the common charge.

33. CRIMINAL LAW — MULTIPLE DEFENDANTS — JOINDER OF DISTINCT CHARGES.

Joinder of distinct criminal charges is permitted against two defendants where there is a significant overlapping of issues and evidence, the charges constitute a series of events, and there is a substantial interconnection between the parties defendant, the trial proofs, and the factual and legal basis of the crimes charged.

34. CRIMINAL LAW — JOINT TRIALS — IMPROPER JOINDER — PREJUDICE TO SUBSTANTIAL RIGHTS.

Improper joining of defendants in a criminal case for trial under separate offenses is not per se reversible error; there must be an affirmative showing of prejudice to the substantial rights of the accused.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Paul G. Bruno,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Weiss,* for defendants on appeal.

Before: J. H. GILLIS, P.J., and ALLEN and BEASLEY, JJ.

PER CURIAM. Following indictment by a citizen's grand jury and an extended trial, defendants Milton Missouri and Charles Blount were convicted on July 27, 1977, of conspiracy to deliver a controlled substance, to wit: heroin, in violation of MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), and MCL 750.157a(a); MSA 28.354(1)(a). In addition, defendant Charles Blount was convicted under a second count with conspiracy to possess a controlled substance, to wit: heroin, with intent to deliver, in violation of the above cited statutes. Defendants appeal these convictions as of right.

The first 11 issues raised on appeal are common to both defendants and will be considered *seriatim.* The remaining two issues are only relevant to defendant Missouri and will be considered at the end of this opinion. Because of the factual complexity of this case and the numerous legal issues raised, a complete recitation of the facts will not be set forth here. Rather, the factual background necessary for a complete understanding of the legal questions involved will be set forth at the appropriate places in this opinion. At this point it is sufficient to note that the charged offenses arose out of alleged criminal conspiracies between eight individuals, including two Detroit police officers, to possess and/or to deliver heroin.

I. *Were defendants denied their right to a speedy trial?*

Defendants contend that they were denied their constitutional[1] right to a speedy trial by the 31-month delay between their October, 1974, indictment and arrest, and the commencement of the trial proceedings in May, 1977. In deciding whether a defendant has been accorded a speedy trial, the Michigan Supreme Court has adopted the general rule established by the United States Supreme Court in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). The definitive test in this area requires balancing the following four factors on an ad hoc basis: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Length of delay.* The length of delay is not

---

[1] US Const, Am VI, *Klopfer v North Carolina,* 386 US 213; 87 S Ct 988; 18 L Ed 2d 1 (1967), Const 1963, art 1, § 20, *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972).

determinative of a speedy trial claim.[2] *People v Hammond,* 84 Mich App 60, 67; 269 NW2d 488 (1978). Length of delay is appropriate because it is the triggering mechanism for considering the speedy trial issue. *People v Collins,* 388 Mich 680, 688-689; 202 NW2d 769 (1972), *Hammond, supra,* 67, *People v Classen,* 50 Mich App 122, 126; 212 NW2d 783 (1973). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker, supra,* 530, *Collins, supra,* 688-689, *People v Chism,* 390 Mich 104, 111-112; 211 NW2d 193 (1973). The total length of delay in this case is 31 months. Since this period of delay is far in excess of the 18-month period of presumed prejudice set forth in *Grimmett, supra,* 606, and the six-month period set forth in MCL 767.38; MSA 28.978, GCR 1963, 789, examination of the other three factors is required. *Collins, supra,* 690, *Chism, supra,* 112, *People v Petrov,* 75 Mich App 532, 534; 255 NW2d 673 (1977), *Classen, supra,* 126, *Hammond, supra,* 67.

*Reason for delay.* Because the nature of the instant charge involved a serious multiple count, "complex conspiracy", a greater period of delay can be tolerated than for "an ordinary street crime". *Barker, supra,* 530-531. *Cf., Collins, supra,* 689. This rule is especially pertinent here since the indictment was issued against eight defendants and involved six counts against some or all of the defendants. Indeed, because of the large number of defendants, numerous attorneys were involved in the litigation, each of whom filed numerous mo-

---

[2] Indeed, "[l]ong delays are not alone a denial of the constitutional right to speedy trial." *Classen, supra,* 126. See, for example, the permissible delays in *Barker, supra* (five years), *Grimmett, supra* (19 months), *Collins, supra* (15 months), *Chism, supra* (27 months), *Classen, supra* (24 months), *People v Cutler,* 86 Mich App 118; 272 NW2d 206 (1978), *lv den* 406 Mich 882 (1979) (37 months).

tions. Of course, the prosecution was entitled to a reasonable time to answer each of these motions and the trial judge time to consider and rule on these motions. *People v Cutler,* 86 Mich App 118, 126; 272 NW2d 206 (1978). *Cf., People v Castelli,* 370 Mich 147, 152-153; 121 NW2d 438 (1963). On appeal, defendants do not contend that either the prosecutor or the judge was dilatory in his responses to the various defense motions. Therefore, the period of delay in bringing the defendants to trial, which is directly attributable to their counsel's vigorous and aggressive pretrial tactics, must not be considered in determining whether their right to a speedy trial was violated. *Chism, supra,* 113, *Collins, supra,* 690-692, *Cutler, supra,* 126, *Hammond, supra,* 67, *Classen, supra,* 126, *People v Mumford,* 60 Mich App 279, 284; 230 NW2d 395 (1975). In addition, the period of time expended by the prosecutor's successful interlocutory appeal from the trial court's order suppressing tape recordings and transcripts and defendant's application for leave to appeal to the Supreme Court are taken out of the calculation. *People v Stewart,* 61 Mich App 167, 174; 232 NW2d 347 (1975), *Hammond, supra,* 67. Moreover, the record reflects that part of the delay was due to defendant Blount's departure from the state in violation of a court order. This period of time, too, is not considered in derogation of defendants' right to a speedy trial. 22A CJS, Criminal Law, § 471, p 48. In short, although the length of delay was considerable, with all of the reasons for it not appearing in the record, we disdain any attempt to attribute the cause of the delay to the prosecutor or the courts. Rather, careful review of the lower court record and the various reasons for the delay reveal that most of it must be ascribed to the defendants, or is at least justifiable under the circumstances.

*Defendants' demand for a speedy trial.* The decisions make it clear that a defendant does not waive his right to a speedy trial by the failure to assert it. *Barker, supra,* 528-529, *Grimmett, supra,* 607. It is equally clear, however, that a defendant's failure to assert his right to a speedy trial is a factor to consider in determining if the right has been denied. *Id.* In this case, the defendants did move to quash the indictment on the basis that they were denied a speedy trial. However, this was not done until just weeks before the commencment of trial proceedings. The motion was denied less than two weeks before the trial proceedings began and after the trial date had been set. Defendants never filed a motion to set a trial date. Since the failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial, we have little difficulty in concluding that the defendants' assertion of that right mere weeks before the commencment of trial and nearly 30 months after indictment is strong evidence that they were not experiencing serious deprivation of their rights. The following passage from *Cutler, supra,* 126-127, is instructive:

"[D]efendant at no time moved the lower court to fix a trial date. Rather, on February 17, 1976, less than two weeks before the trial was scheduled to begin, he filed a motion to dismiss for denial of his right to a speedy trial. While some may view this a shrewd trial 'gamesmanship', we are singularly unimpressed with an allegation of error based on delay, where, as here, defense counsel showed markedly less concern with bringing the matter to trial than with contriving to build error into the record for purposes of appeal."

See *Collins, supra,* 693, *Hammond, supra,* 68. The failure by defendants' attorneys to demand a speedy trial during the previous 30 months rein-

forces the conclusion that they "did not get a speedy trial because defendant[s] did not want a speedy trial". *Classen, supra,* 127.

*Prejudice to the defendants.* In *Collins, supra,* 694, the Supreme Court recognized two kinds of prejudice which could accrue to a defendant as a result of pretrial delay: (1) prejudice to his person in the form of oppressive pretrial incarceration and excessive anxiety and concern, and (2) prejudice to his defense caused by loss of evidence or unavailability of key witnesses. *Barker, supra,* 532. We cannot doubt that defendants felt anxiety and concern about the outcome of the ultimate disposition of the case against them. *Hammond, supra,* 68. Still, because they were free on bond pending the trial and, therefore, were not incarcerated during the delay, and because the absence of an objection in the trial court may be viewed as an indication that they did not feel prejudiced, we conclude that the first kind of prejudice is not present in this case.

The defendants make two arguments relative to the second type of prejudice. First, they contend that the death of a prosecution witness, Lonnie Henderson, caused prejudice to their defense since he was not available for cross-examination at trial. Henderson's testimony was taken at a preliminary examination prior to his death. He was cross-examined at that time by counsel for the defendants. The witness's testimony did not implicate either defendant in any wrongdoing. As a result of these factors, it cannot be said that the reading of this testimony at the subsequent trial in any way prejudiced the defense of the two defendants. Second, the defendants contend that because of the delay they could not adequately recall their activities during the period of the charged conspiracy

and, therefore, were prejudiced in defending themselves. We acknowledge that the diminution of a witness's memory is a factor to be considered in considering the prejudice to an accused's defense because of a delay in the trial. *United States v MacDonald,* 531 F2d 196, 208 (CA 4, 1976), *rev'd on other grounds* 435 US 850; 98 S Ct 1547; 56 L Ed 2d 18 (1978). However, nothing besides counsel's assertion on appeal that there was a memory loss supports this form of prejudice. *Barker, supra,* 534.

On balance, we conclude that no serious or demonstrated prejudice to either the defense or the defendants has been shown. Length of the delay alone is not determinative, especially where most of it is directly attributable to the defense and where only a belated assertion of the right to a speedy trial was made. Having weighed the factors required to be balanced by both *Barker* and existing Michigan decisions, we hold that the defendants were not denied their constitutional right to a speedy trial.

II. *Were defendants denied due process of law by lack of a speedy appeal to this Court?*

Defendants contend that their convictions should be reversed because of a nearly 18-month delay between appointment of appellate counsel and preparation of the trial transcript, five months after this Court ordered that it be prepared. As a result of the lengthy and excessive delay defendants claim to have been irreparably prejudiced, involving continuous incarceration since their sentencing, denial of their freedom of movement and association, lost opportunities for meaningful employment, and disruption of their family life.

We do not dispute the fact that defendants have suffered as a result of a delayed consideration of

their appeal. However, there is no allegation that the merits of the appeal itself have been affected by this delay. Delay in appellate review does not automatically entitle a defendant to a new trial. *People v Gorka,* 381 Mich 515, 520; 164 NW2d 30 (1969), *People v LaTeur,* 39 Mich App 700, 705; 198 NW2d 727 (1972), *People v McNamee,* 67 Mich App 198, 205; 240 NW2d 758 (1976), *lv den* 397 Mich 846 (1976). The remedy for dilatory review is review itself. *Dowd v United States, ex rel Cook,* 340 US 206, 208, fn 3; 71 S Ct 262; 95 L Ed 215 (1951), *People v Lorraine,* 34 Mich App 121, 122; 190 NW2d 746 (1971), *McNamee, supra,* 205. As our full consideration of the merits of defendants' appeal negates any claim of prejudice arising out of the delay in reaching this Court, we conclude that defendants were not denied due process of law. *McNamee, supra,* 205.

III. *Did the prosecution's conduct deny defendants a fair trial?*

Next, defendants point to numerous instances of alleged prosecutorial misconduct in the record which, they claim, either singularly or in combination, denied their right to a fair trial.

"[A] well-tried, vigorously argued case ought not to be overturned due to isolated improper remarks which could have been cured had an objection been lodged." *People v Duncan,* 402 Mich 1, 17; 260 NW2d 58 (1977). Defendants were entitled to a fair trial, not a perfect trial. *People v Joyner,* 93 Mich App 554, 562; 287 NW2d 286 (1979). The trial proceedings extended over many weeks with the testimony filling approximately ten thousand pages of transcript, reflecting considerable acrimony between the six defense attorneys and the two prosecution attorneys. *People v Allen,* 351 Mich 535, 544; 88 NW2d 433 (1958). The trial court

continually had to calm the attorneys down. While these factors do not justify prosecutorial misconduct, they certainly tend to minimize the impact of any errors, especially where the behavior of the prosecutor is not so prejudicial as to cause the jury to suspend its own power of judgment in considering the matter before it. See *People v Burnstein,* 261 Mich 534, 538; 246 NW 217 (1933), *People v Christensen,* 64 Mich App 23, 32; 235 NW2d 50 (1975). With this standard in mind, we proceed to consider the various allegations of prosecutorial improprieties.

First, in light of the trial court's order proscribing the prosecutor from utilizing the term "Missouri Organization" until the proofs justified it, the prosecutor should not have used the term in his opening remarks to the jury. In the absence of this prior ruling, the prosecutor would have been justified in using the term because the evidence which the prosecutor intended to introduce tended to show a conspiracy in which Missouri was the supplier of narcotics, *i.e.,* a "Missouri Organization". *People v Moss,* 70 Mich App 18, 32; 245 NW2d 389 (1976), (KELLY, J., concurring). However, the violation of the court order did not prejudice the defendant's cause since the jury was immediately cautioned not to consider the term "organization".

Second, the prosecutor's request of the trial judge as to whether he was "going to place a stipulation on the record" concerning the agreement just reached, outside the presence of the jury, was not improper. The prosecutor was not asking defense attorneys for a stipulation in front of the jury. Rather, he was only requesting that the previously reached agreement concerning the witness's expertise for knowing the meaning of

certain "street" parlance be brought to the attention of the jury. The prosecutor did not misbehave in establishing the foundational facts necessary to support the testimony of his forthcoming witness, especially where those facts had been established previously by stipulation of the litigants.

Third, although the prosecutor should not have referred to certain tape recordings previously ruled inadmissible by the trial judge in trying to establish the chain of custody for certain admissible tape recordings, the prejudice to defendants, if any, is slight. The exclusion of the referred-to tape recordings was not attributed to the defendants. Nor was the content of these suppressed tapes ever brought to the attention of the jury. Indeed, reference to the record establishes that the prosecutor was caught in a "Catch-22" situation in his attempt to establish the chain of custody for the admissible tapes.[3] Accordingly, in the absence of any actual prejudice to the defendants by the prosecutor's fleeting reference to the inadmissible tapes, we cannot find reversible error. *People v Miller,* 28 Mich App 161, 165; 184 NW2d 286 (1970), *lv den* 384 Mich 800, 826 (1971). Likewise, we find harmless the prosecutor's remarks in rebuttal argument concerning who was to blame and the content of the suppressed evidence. Not only did the trial judge immediately sustain the defendants' objection and give a cautionary instruction that the tapes were not in evidence, but counsel for defendant Missouri stated that the suppression of the tape was due to an objection by the prosecu-

---

[3] The prosecutor argued in response to defendants' objection on this issue that his reason for referring to all of the tape recordings, both admissible and inadmissible, was due to an earlier order of the court that he not lead the witness concerning the particular tapes over which the witness-police officer had custody. Thus, his questioning of the witness appeared to be in good faith, not otherwise prejudicing the rights of the defendants. *Burnstein, supra.*

tor. Though this does not excuse the prosecutor's remark, it certainly tended to neutralize the improper "testimonial" argument. Defendants were not prejudiced by this episode.

Fourth, we find nothing prejudicial to defendants' right to a fair trial in the prosecutor's other arguments to the jury and questioning of various witnesses. While the prosecutor was in technical violation of the trial court's order to use the word "powder" when referring to the substance passed among the alleged coconspirators, his use of the term "suspected heroin" was in keeping with the spirit of the ruling. This is particularly true in light of the trial judge's instruction to the jury that the substance had not been proven to be heroin and where the prosecutor did not assert, as a matter of fact, that the substance was heroin. Defendants' contention that they were forced to object on numerous occasions to attempts by the prosecutor to establish a foundation for the admissibility of a document and to elicit the meaning of a particular term is true, but without any legal significance. Prosecutorial misconduct cannot be predicated on good faith efforts to admit evidence. *People v Davis,* 343 Mich 348, 357; 72 NW2d 269 (1955).

The same rule applies to the prosecutor's attempt to introduce evidence of a witness's prior inconsistent statement and information contained on a police department expense record. Absent a showing of bad faith on the part of the prosecutor or prejudice to the defendants, neither of which is alleged by defendants or appears in the record, we will not reverse simply because the defense attorneys were required to do their job in objecting to what the prosecutor perceived as the appropriate manner in which to proceed. As an advocate for

the state, the prosecutor is entitled to attempt to introduce evidence which he legitimately believes will be accepted by the court, so long as that attempt does not actually prejudice the defendants. Finally, we find nothing inherently misleading in the prosecutor's closing argument. The trial judge, at the defendants' urgings, asked the prosecutor to state his argument relating to certain legal principles with greater clarity. After continued dissatisfaction with the prosecutor's explanation, the trial court took it upon itself to clarify the prosecutor's remark. Thus, any misstatement by the prosecutor was corrected by the immediate intervention of the trial judge.

Fifth, though we do not condone the language used by the prosecutor in raising a legitimate objection to the defense attorney's questioning of a witness, in general, we agree with the trial judge that there was "no problem with the way the objection was stated". Any "editorializing" which the prosecutor may have engaged in was clearly justified under the circumstances brought on by defense counsel's questioning. *Allen, supra,* 544.

Finally, we find no prejudicial error in the prosecutor's examination of various witnesses. Although the trial court may have erred in forbidding the prosecutor from using the witness's earlier consistent statement in rebutting the defendants' charge of recent fabrication, *People v Coles,* 79 Mich App 255, 261; 261 NW2d 280 (1977), the prosecutor abided by this order and did not continue with his "improper" form of questioning. In addition, any error which may have been created by the prosecutor's questioning on redirect examination concerning defendant Missouri's possible sentence for allegedly bribing a judge was cured when the trial judge informed the jury that an investigation by

the prosecutor's office found that no bribery had occurred. Furthermore, whatever negative suggestion may have been raised by a prosecutorial question concerning whether a deceased witness had ever been put in protective custody was neutralized by the judge's cautionary instruction to the jury that the entire matter was irrelevant to the case. Finally, we find nothing improper with the prosecutor's mention of a case name as authority for continued questioning of a witness since he was not trying to usurp the role relegated to the trial judge (cf. *People v June,* 34 Mich App 313; 191 NW2d 52 [1971]), and, in any event, was correct in his reliance on that legal authority.

The above claims of prosecutorial misconduct did not, either singularly or in combination, deny defendants a fair trial.

IV. *Did the trial court reversibly err in denying defendants' motion for a bill of particulars?*

Prior to trial, defendants moved for an order compelling the prosecution to prepare a bill of particulars. The motion was denied. Defendants claim that the trial court erred in denying their motion because the face of the indictment was so vague that it was impossible for them to determine what facts supported which of the two conspiracies charged against them. Consequently, defendants argue, the prosecution was able to present any testimony it desired on the conspiracy counts, thus maintaining an "evolving" theory of the case.

In considering the merits of this claim, it is first necessary to determine whether defendants were charged under a statutory short form or the common law long form of indictment. Where the former is used, statute requires the prosecution to file a bill of particulars on seasonable request. Failure

to do so is error. MCL 767.44; MSA 28.984, *People v Tenerowicz,* 266 Mich 276, 287-288; 253 NW 296 (1934), *People v Clark,* 85 Mich App 96, 100; 270 NW2d 717 (1978), *People v Jones,* 75 Mich App 261, 268-269; 254 NW2d 863 (1977), *lv den* 402 Mich 822 (1977). Denial of the bill of particulars in cases where the common law long form of indictment is used is reviewable only for an abuse of discretion. 75 Mich App 269. Although there are cases which would suport a contrary position,[4] we are inclined to hold that the indictment under which the defendants were charged was the short-form method of charging conspiracy.[5] As such, we must conclude that the trial court erred in denying defendants' motion for a bill of particulars. But is the error prejudicial?

Although the court should have ordered the bill of particulars at the time the motion was made, the record does not show prejudice, and the error is not reversible. *Tenerowicz, supra,* 289. Prior case law demonstrates that where a preliminary examination in which the accused and his counsel were present and participated has been conducted prior to the request for a bill of particulars, as here, the failure to grant the request is not reversible so long as the defendants are given "detailed information of the people's claims". *Tenerowicz, supra, 288, Jones, supra, 269-270, People v Mc-*

[4] Compare, *e.g. Tenerowicz, supra, Jones, supra,* 269, fn 3.

[5] Briefly, the indictment charged the defendants with conspiring among themselves and others to deliver (Count I), and to possess with the intent to deliver (Count II) a controlled substance, namely, heroin. This form of indictment comports with the statutory short form pursuant to MCL 767.44; MSA 28.984. In addition, the indictment contained information stating the place and time that the two conspiracies were alleged to have occurred pursuant to MCL 767.45; MSA 28.985. While the indictment was sufficient to charge the offenses of conspiracy, 5 Michigan Law & Practice, Conspiracy, § 25, p 604, its minimum content leads us to conclude that the indictment was issued in the statutory short form.

*Kinney,* 10 Mich 54, 92 (1862), *People v Earl,* 299 Mich 579, 581; 300 NW 890 (1941), *People v Harbour,* 76 Mich App 552, 556-557; 257 NW2d 165 (1977), *lv den* 402 Mich 832 (1977).

In the case at bar, most of the essential facts which came out at trial were brought out at the time of the preliminary examination. However, it is entirely possible, as asserted by defendants both below and on appeal, that they could not tell from the preliminary examination which acts went to each of the charged conspiracies. Of course, the fact that neither defendant challenged the sufficiency of the evidence to bind them over for trial, and the fact that both defendants were indicted on Counts I and II, "* * * seem to indicate that defendants did not deem the bill of particulars indispensable to a preparation of their defense * * *". *Tenerowicz, supra,* 289. Nonetheless, reference to the record and the trial court's decision to conduct a two-day hearing for the sole purpose of clarifying which alleged acts went with which of the counts illustrates the difficulty faced by the defendants in determining "what acts of [theirs] are claimed to constitute the crime". *People v Margelis,* 246 Mich 459, 462; 224 NW 605 (1929).

Yet, the difficulty faced by the defendants in this regard was overcome by the aforementioned hearing which, as noted by the trial judge, in effect, gave the defendants "more specificity than a bill of particulars ever could". This factor, combined with the prosecutor's compliance with the pretrial order to file a "People's Theory of the Case"—showing which separate, alleged acts went to prove which of the conspiracies—convinces us that the defendants were "specifically" apprised of "the nature of the offense charged", MCL 767.44; MSA 28.984, *Margelis, supra,* 462. In short, the erroneous fail-

ure of the trial judge to order the filing of the bill of particulars was more than compensated for by the other remedies provided to defendants for ascertaining what acts of theirs were claimed by the prosecution to constitute the charged conspiracies.

V. *Should the holding requiring the issuance of a search warrant prior to instituting a participant monitoring procedure have been applied in this case?*

Defendants contend that the holding of *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), *cert den* 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 (1975), requiring a search warrant before participant monitoring is permitted, should have been applied in this case. Upon interlocutory appeal to this Court, a panel ruled adversely to the position presently asserted by defendants in this appeal. The Supreme Court denied defendants' emergency application for leave to appeal *People v Rogers,* 399 Mich 893 (1977). We decline to consider the merits of this issue at length as the previous order by this Court is controlling as the law of the case. *People v Hines,* 88 Mich App 148, 155-156; 276 NW2d 550 (1979), *People v Paintman,* 92 Mich App 412, 416; 285 NW2d 206 (1979).

In any event, we note that in *Clinton County Prosecutor v 65th Dist Judge,* 76 Mich App 50; 256 NW2d 245 (1977), one panel of this Court held that *Beavers* was applicable to all trials conducted after its decisional date. This decision was reversed by the Michigan Supreme Court, 402 Mich 835 (1977). The Court specifically stated in its order that "*Beavers* only has applicability to police conduct which occurred after April 7, 1975". Hence, the issue raised here is without merit.

VI. *Did the trial court err by admitting the*

*preliminary examination testimony of a witness who died prior to trial?*

Defendants contend that the trial court committed reversible error by admitting the preliminary examination testimony of a witness who died prior to trial.

Admission of such evidence is governed generally by *People v Martin #2,* 21 Mich App 667, 671; 176 NW2d 470 (1970), *lv den* 384 Mich 820 (1971):

"Under the appropriate circumstances, Michigan criminal procedure permits the introduction of prior recorded testimony (MCLA § 768.26 [Stat Ann 1954 Rev § 28.1049]), in accordance with generally accepted rules of evidence. 5 Wigmore, Evidence (3rd Ed), §§ 1395, 1396, 1402. However, the United States Supreme Court has declared that the 6th Amendment right to cross-examine and confront witnesses is secured to state court defendants through the 14th Amendment. *Douglas v Alabama,* (1965), 380 US 415 (85 S Ct 1074, 13 L Ed 2d 934). Accordingly, where a defendant has been effectively denied his rights of cross-examination and confrontation at a preliminary examination, testimony taken at the examination may not be introduced at trial. *Pointer v Texas* (1965), 380 US 400 (85 S Ct 1065, 13 L Ed 2d 923)."

The precise question we must answer is, under the facts of this case, were defendants denied their constitutional right of cross-examination and confrontation by the admission of the preliminary examination testimony of a witness who subsequently became "unavailable" through death. *People v Wittebort,* 81 Mich App 529; 265 NW2d 404 (1978), *lv den* 405 Mich 830 (1979), MRE 804(a)(4)? If the magistrate put a limit on the pertinent and fair cross-examination of the witness at the preliminary examination, we must answer in the

affirmative on authority of *Martin #2, supra,* 676, *Wittebort, supra, People v Dates,* 52 Mich App 544, 548; 218 NW2d 100 (1974), *rev'd on other grounds* 396 Mich 820 (1976). However, if defendants' attorneys had an "adequate opportunity" to cross-examine the witness at the preliminary examination and either did so or chose not to, then the testimony would be available for introduction into evidence at the ensuing trial. *Id.*

Briefly, defendants claim that they were denied an adequate and meaningful opportunity to cross-examine a prosecution witness, Lonnie Henderson, because of the lower court's efforts to limit all cross-examination of prosecution witnesses during the preliminary examination. Our reading of the examination transcripts does not convince us that the examining magistrate "repeatedly harassed, intimidated, and 'cut-off' defense counsel". Rather, the *only* limitation which the lower court judge placed on any of the defense attorneys at the preliminary examination was to place a 15-minute limitation, beyond the hour and a half already permitted, on the attorney for codefendant Duane Rogers with respect to his questioning of the prosecution's chief witness, Daniel Carpenter. Nothing in the record demonstrates that the judge in any way hindered the questioning by any attorney of the witness Lonnie Henderson. In fact, the attorney for one codefendant waived the right to cross-examine the witness, while the attorneys for the other codefendants, including the attorney for defendants Missouri and Blount, specifically examined the witness and concluded, without any prodding from the judge, that they had "no further questions". Our "qualitative review of the record" demonstrates that the reason defendants' attorney may have conducted a relatively brief cross-exami-

nation of the witness was not because the trial court "cut off" defense counsel, but may have been because the witness never mentioned the names of either defendant and, thus, did not directly implicate them in the alleged conspiracies. *Wittebort, supra,* 533. Therefore, since the defendants' attorney was given an "adequate opportunity" to cross-examine the witness at the preliminary examination and, indeed, did so, we conclude that they were not denied their constitutional rights under *Pointer v Texas,* 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965), *Barber v Page,* 390 US 719, 725-726; 88 S Ct 1318; 20 L Ed 2d 255 (1968), and *California v Green,* 399 US 149, 166; 90 S Ct 1930; 26 L Ed 2d 489 (1970).

VII. *Did the prosecution establish the "chain of custody" of heroin allegedly transferred among the coconspirators?*

Defendants contend that the prosecutor failed to establish a proper chain of custody as part of the foundation for the introduction of the alleged heroin transferred from the defendants to codefendant Duane Rogers and undercover officer Carpenter. Briefly, defendants reason that because the prosecution did not establish that the substance given to Rogers and Carpenter by them on May 17, 1974, was the same substance later determined to be heroin upon its transfer to Lonnie Henderson on May 18, 1974, then the trial court erred in admitting the latter's testimony at trial.

Initially, it must be noted that no objection was lodged against reading the preliminary examination testimony of Lonnie Henderson on the basis that the substance about which he was testifying was inadmissible as physical evidence. Though normally this prevents review by this Court, *People v Orsie,* 83 Mich App 42, 45; 268 NW2d 278

(1978), MRE 103(a)(1), to prevent a miscarriage of justice, we consider the issue. *People v Beamon,* 50 Mich App 395, 398, fn 5; 213 NW2d 314 (1973).

The major flaw in the defendants' argument is that the substance delivered to Henderson on May 18, 1974, was never offered or admitted into evidence. All of the cases relied on by the defendants and prosecution on the "chain of custody" issue involved situations in which the challenged evidence had been admitted into evidence but where there was a question as to whether an adequate foundation had been established. *People v Curry,* 39 Mich App 412, 417; 197 NW2d 837 (1972), *Beamon, supra,* 399, *People v Oliver,* 90 Mich App 144, 146-147; 282 NW2d 262 (1979), *rev'd on other grounds* 407 Mich 857 (1979). Here, there is no question concerning the authenticity or identity of the substance because the purported narcotics were never offered or admitted into evidence. Hence, there can be no "chain of custody" problem.

In reality, the issue is addressed to the relevance of the witness's testimony. Defendants seem to be arguing that Henderson's testimony was logically unrelated to whether the defendants conspired to deliver heroin because the prosecution failed to establish that the substance given to him by Rogers through Blount at Missouri's instruction was, in fact, heroin. We disagree.

The evidence presented by the prosecution, though circumstantial, raised a very strong inference that the substance given to Henderson on May 18, 1974, was the very same substance that had been received by codefendant Rogers from Blount and Missouri the day before. Without reciting all of the relevant testimony, we find that the excerpts set forth by the prosecution in its appel-

late brief, combined with the strong inference arising from the fact of Rogers' and Carpenter's "partnership", *i.e.,* that they were buying and selling drugs in a joint effort and, thus, would have transferred only those substances which the other knew about, were sufficiently certain and nonspeculative to permit the inference that the heroin received for distribution by Henderson was the same substance that Rogers had received from the defendants the day before. *Orsie, supra,* 47-48. As such, the testimony of Lonnie Henderson that the substance he received from Rogers was heroin was properly admissible as relevant. *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974).

VIII. *Were defendants denied a fair trial because the trial judge's conduct during jury voir dire breached his duty of impartiality?*

During jury voir dire, one prospective juror indicated that he did not "like to be around people that use (narcotics)". The trial court proceeded to voir dire the witness after the prosecutor had completed his questioning by asking:

"The Court: Let me ask you this, Mr. Keith [juror]: Would that feeling, *which is perhaps a natural feeling,* in any way affect your ability to be fa[i]r and impartial to people who have used it or if the evidence may claim that they've used it?

"Juror Keith: No, it would not." (Emphasis added.)

On appeal, the defendants claim that the emphasized portion of the judge's statement breached the rule of judicial impartiality and demeaned the defendants and their defense, which was that they were heroin addicts being exploited by codefendants Rogers and Key.

The general rule is that if the trial judge's conduct prevented the defendant from obtaining a

fair trial, reversal is mandated. *People v Roby*, 38
Mich App 387, 388-389; 196 NW2d 346 (1972),
*People v Spaulding*, 42 Mich App 492, 499; 202
NW2d 450 (1972), *lv den* 388 Mich 809 (1972),
*People v Cole*, 349 Mich 175; 84 NW2d 711 (1957).
We find nothing inherently inappropriate with the
trial judge's comment in his questioning of the
juror. His observation that it is a natural feeling
not to like being around narcotics users was not
disparaging to defendants personally, nor did it in
any way reflect on their defense. Rather, in an
attempt to elicit the juror's true feeling as to
whether he could judge the case impartially, the
judge acknowledged the normalcy of not wanting
to associate with narcotics users. He never ex-
pressed his own opinion on the merits of the issue,
nor did he persist in commenting about the mat-
ter. Compare *Roby, supra.* Accordingly, we con-
clude that the trial judge did not breach his duty
of impartiality.

IX. *Is it reversible error to impanel more than
14 persons on a jury?*

Defendants contend that the trial court's impan-
eling of 15 jurors in contravention of MCL
768.18(1); MSA 28.1041(1) constituted an abuse of
discretion. Because of the anticipated length of
this trial, the parties had originally stipulated to a
jury of 16 members. This was later reduced to 15
members. However, when one of the attorneys
discovered that the above cited statute only per-
mitted the impaneling of 14 jurors, he objected to
the procedure. Counsel for defendant Missouri
joined in the objection, although counsel for defen-
dant Blount did not. Hence, as to the latter, the
issue has not been preserved for appeal.

The issue raised is one of first impression under
the above cited statute but gives us no difficulty

since, even if the trial judge was not entitled to impanel more than 14 jurors under the statute, he was authorized to do so under the general court rules. GCR 1963, 511.2 states in pertinent part:

"The Court may direct that 13 *or more* jurors may be impaneled to sit in any criminal case * * *." (Emphasis supplied.)

In contrast to the statute, the court rule permits the impaneling of "13 or more jurors" without setting a limit on the maximum number. In such a case, the court rule prevails since the Supreme Court has the power to formulate and alter matters of judicial practice and procedure. Const 1963, art 6, § 5, *Perin v Peuler,* 373 Mich 531, 541; 130 NW2d 4 (1964), *People v Jackson,* 391 Mich 323, 336; 217 NW2d 22 (1974), *People v Joker,* 63 Mich App 421; 234 NW2d 550 (1975). Therefore, the trial judge did not abuse his discretion by impaneling 15 jurors to hear the trial in the instant case.

X. *Was sufficient evidence adduced at trial to prove that the defendants had agreed to commit a substantive offense?*

For a conspiracy conviction to lie, there must be proof of two specific intents: (1) the intent to agree (conspire) and (2) the intent to accomplish the substantive offense. *People v McCracken,* 88 Mich App 286, 295; 276 NW2d 609 (1979), *People v Atley,* 392 Mich 298, 310-311; 220 NW2d 465 (1974). For there to be a conspiracy, it must be shown that the coconspirators shared the requisite intents. *Atley, supra,* 311-312. In addition, the following principles of law must be recalled:

"It must be shown that the respective conspirators intended to further, promote, or cooperate in the unlaw-ful enterprise. The gist of the offense of conspiracy lies

in the unlawful agreement between two or more persons. *People v Smith,* 296 Mich 176; 295 NW 605 (1941); *People v Asta,* 337 Mich 590, 611; 60 NW2d 472 (1953). Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. [1 Wharton, Criminal Law & Procedure, Conspiracy, § 83, pp 178-179.]

"Furthermore, conspiracy may be established, and frequently is established by circumstantial evidence. *People v Pitcher,* 15 Mich 397, 403 (1867), and may be based on inference. *People v Robinson,* 306 Mich 167, 175; 10 NW2d 817 (1943); see also *People v Huey,* 345 Mich 120, 127; 75 NW2d 893 (1956). However:

" '[T]he circumstances must be within safe bounds of relevancy and be such as to warrant *a fair inference of the ultimate facts.'* (Emphasis in original) *People v Beller,* 294 Mich 464, 469; 293 NW 720 (1940)." *Atley, supra,* 311, and see, *People v Sobczak,* 344 Mich 465, 469; 73 NW2d 921 (1955).

Defendants claim that, at best, the evidence only showed that a buyer-seller relationship was established. Careful review of the evidence and all fair inferences warranted therefrom leads us to disagree.

Considering first the evidence showing intent on the Count I conspiracy, the following evidence was adduced. On May 15, 1974, Blount told Rogers and Carpenter about a "business" competitor whom he wanted them to "take care of". Rogers responded that he would. Blount also asked Rogers not to raid one of his narcotics pads. Blount also asked Rogers about a case pending against Milton Missouri. Rogers indicated that they could bribe a judge. On May 16, 1977, Officers Carpenter and Rogers met defendants Blount and Missouri, and they went to the Shorecrest Motel. Discussions ensued about the possibility of fixing the case

against Missouri. Mr. Missouri stated that he was "finally glad to meet the officers who had been doing so much for him in the Fifth Precinct". Missouri also stated that, "he wouldn't be any good to us in jail". Mr. Missouri also asked how much narcotics Officer Carpenter could handle, and the latter responded a hundred thousand dollars worth. Missouri stated he would need a day's notice to get the drugs.

At this meeting, Duane Rogers then told Blount that he and Carpenter wanted to buy half an ounce of heroin. Carpenter gave $500 to Blount, who in turn handed it to Missouri. Missouri then stated that Officers Carpenter and Rogers could get the heroin at Blount's home. Later, they were given an aluminum foil package containing powder.

In another meeting with Blount, Blount gave Rogers $75 and a police badge. The badge was to be used to obtain evidence in police custody against Missouri, as had earlier been discussed during the Shorecrest Motel meeting. Later, Blount quoted a price to Officer Carpenter of $12,-000 to $15,000 for a kilo of heroin.

This evidence is sufficient to find intent to agree as to both defendants. Rogers, another Count I co-conspirator, agreed to eliminate one of Blount's competitors and not to raid a dope pad controlled by Blount. The Shorecrest Motel meeting saw Blount making arrangements to keep Missouri out of jail. Ultimately, Blount gave Rogers a police badge to be used to get the evidence against Missouri out of police custody.

Missouri's statements concerning his being glad to meet the officers who had done so much for him and that he wouldn't be of any use to the group in jail shows a syndicate relationship. Missouri indi-

cated that he could obtain a hundred thousand dollars worth of narcotics for Carpenter's people on a day's notice. Furthermore, Missouri took money given to Blount for the purchase of narcotics and told the buyers that they could get the heroin later.

The actual deliveries of a substance, presumably heroin, show an intent to commit the substantive offense as to both defendants. Although Carpenter was never able to have the substance he and Rogers received analyzed, there was sufficient evidence from which it could be inferred that it was heroin.

The defendants argue that only a buyer-seller relationship was established. However, this neglects the evidence showing that the group was desirous of keeping Missouri out of jail, presumably so that they could continue to be supplied by the "big man".

In fact, the evidence makes out a "chain" conspiracy. In the seminal case on chain conspiracies, the Second Circuit Court of Appeals affirmed conspiracy convictions where narcotics smugglers sold to middlemen who, in turn, sold to retailers. *United States v Bruno,* 105 F2d 921 (CA 2, 1939), *rev'd on other grounds,* 308 US 287; 60 S Ct 198; 84 L Ed 257 (1939). See also *United States v Bynum,* 485 F2d 490, 495-496 (CA 2, 1973). Here, although there were buyers and sellers along the chain, all parties shared the knowledge that the narcotics were to be ultimately delivered for consumption by street users. All agreed to meet the object—delivery—by fulfilling their agreements to provide narcotics at various links along the chain and by keeping Missouri out of jail. The crime of conspiracy is based on the theory that where individuals act in concert, their conduct is more

harmful to society than if one committed the offense alone. This rationale is clearly called into play in this case where Rogers could not deliver large amounts of narcotics without a reliable source, and Missouri could not sell large amounts of narcotics without a network of distributors moving the drugs to the ultimate users.

As to the Count II conspiracy, the following evidence establishing the requisite intent was adduced. (Only Blount was convicted of Count II.) Officer Rogers told Officer Carpenter about a raid on a dope dealer being planned by Blount. He further indicated that he had given Blount a card with his name on it so that if he were stopped by the police, he could just say that he was Officer Rogers' "snitch". On another occasion, Blount told Rogers about a place to raid on Detroit's northwest side to get a large amount of narcotics. Blount also wanted somebody there killed.

At another meeting, Blount, Rogers, codefendant Frances Missouri, and Carpenter discussed "ripping off" a shipment of narcotics coming in from Detroit Metropolitan Airport from siblings of Frances Missouri. At this time, Blount stated that everybody transporting the narcotics from the airport would have to be killed. He also indicated that he didn't want Milton Missouri to know about the deal and that it should be kept among the four of them.

Sufficient evidence was adduced to establish the Count II conspiracy through Blount's involvement in discussions concerning the "rip-off" of drugs from Detroit Metropolitan Airport. Carpenter's testimony was such that a jury composed of reasonable persons could conclude that Blount had agreed to the "rip-off". He made suggestions about how the operation should proceed. Furthermore,

Blount actually gave Officer Rogers information about where a raid could be conducted to get a large quantity of narcotics. It can be inferred that the two were involved in a joint effort to "tip over" competitors.

Accordingly, we conclude that sufficient evidence was introduced at trial to establish beyond a reasonable doubt the unlawful agreement between the respective coconspirators.

XI. *Was there an impermissible variance between the proofs and Count I of the indictment?*

Count I of the indictment charged a single conspiracy to deliver a controlled substance. Defendants contend that their convictions on Count I must be reversed because four separate and distinct conspiracies were established at trial, rather than one unitary conspiracy. We disagree.

The leading case on conspiracies involving drug syndicates is *Bruno, supra,* 922, in which the Second Circuit Court of Appeals discussed and rejected the identical claim now raised on appeal:

"The first point was made at the conclusion of the prosecution's case: the defendants then moved to dismiss the indictment on the ground that several conspiracies had been proved, and not the one alleged. The evidence allowed the jury to find that there had existed over a substantial period of time a conspiracy embracing a great number of persons, whose object was to smuggle narcotics into the Port of New York and distribute them to addicts both in this city and in Texas and Louisiana. This required the cooperation of four groups of persons; the smugglers who imported the drugs; the middlemen who paid the smugglers and distributed to retailers; and two groups of retailers— one in New York and one in Texas and Louisiana—who supplied the addicts. The defendants assert that there were, therefore, at least three separate conspiracies; one between the smugglers and the middlemen, and one

between the middlemen and each group of retailers. The evidence did not disclose any cooperation or communication between the smugglers and either group of retailers, or between the two groups of retailers themselves; however, the smugglers knew that the middlemen must sell to retailers, and the retailers knew that the middlemen must buy of importers of one sort or another. Thus the conspirators at one end of the chain knew that the unlawful business would not, and could not, stop with their buyers; and those at the other end knew that it had not begun with their sellers. That being true, a jury might have found that all the accused were embarked upon a venture, in all parts of which each was a participant, and an abettor in the sense that the success of that part with which he was immediately concerned, was dependent upon the success of the whole."

See also *United States v Rojas,* 537 F2d 216 (CA 5, 1976), *cert den* 429 US 1061; 97 S Ct 785; 50 L Ed 2d 777 (1977), *United States v Sin Nagh Fong,* 490 F2d 527 (CA 9, 1974), *cert den* 417 US 916; 94 S Ct 2618; 41 L Ed 2d 220 (1974), *United States v Kearney,* 560 F2d 1358 (CA 9, 1977), *cert den* 434 US 971; 98 S Ct 522; 54 L Ed 2d 460 (1977). Michigan law is in accord with this rule, and we affirm on authority of *People v Huey,* 345 Mich 120, 125; 75 NW2d 893 (1956), and *People v Cooper,* 326 Mich 514, 521; 40 NW2d 708 (1950), and authorities cited therein.

Any possible variance between the information and the proofs would have prejudiced those co-conspirators at the retail end of the narcotics distribution chain, *e.g.,* Lonnie Henderson and Ronnie Smith. However, this variance in no way prejudiced Blount or Missouri. *United States v Miley,* 513 F2d 1191, 1207 (CA 2, 1975), *Berger v United States,* 295 US 78, 82; 55 S Ct 629; 79 L Ed 1314 (1935). Therefore, we hold that defendants' claim is without merit.

XII. *Was there sufficient evidence identifying defendant as the person referred to as "Milton Missouri" at the preliminary examination?*

Defendant Missouri contends that the examining magistrate abused his discretion in binding defendant over for trial because he was never identified at the preliminary examination as the "Milton Missouri" who did the acts in question. Following the preliminary examination, but prior to trial, counsel for Missouri moved to dismiss the indictment against him on the ground that no one for the prosecution identified him as the alleged co-conspirator "Milton Missouri". Rather than specifically rule on the merits of the motion by reviewing the evidence presented at the preliminary examination, and rather than remand the case for the taking of further evidence pursuant to *People v Mikovich,* 375 Mich 536; 134 NW2d 720 (1965), and *People v Kennedy,* 384 Mich 339; 183 NW2d 297 (1971), the trial court ordered that a special identification procedure be held in order that the prosecution witnesses might try to identify the defendant as the Milton Missouri to whom they were referring in the course of their testimony at the preliminary examination.

The record indicates that the prosecution arranged for this special identification procedure but that the defendant never appeared. The trial judge avoided placing the blame on either party for the failure to fulfill the earlier order but offered to arrange for an immediate in-court lineup so that the matter could be finally settled. Counsel for defendant Missouri refused the opportunity for this lineup.

We view this defense decision not to participate in the recommended lineup as constituting a waiver of the alleged deficiency in the preliminary

examination. Defendant's choice not to pursue and resolve the issue before the trial court when given the opportunity to do so constituted relinquishment of his right to do so on appeal. *People v Sparks,* 53 Mich App 452, 454; 220 NW2d 153 (1974), *lv den* 393 Mich 135 (1974), *People v Keshishian,* 45 Mich App 51, 52-53; 205 NW2d 818 (1973).

XIII. *Did the trial court abuse its discretion in denying Missouri's motion to sever his trial from Blount's?*

Defendant Missouri claims that the trial court abused its discretion by denying his pretrial motion for a severance and separate trial. Defendant argues that he was prejudiced by a joint trial because the jury heard immaterial evidence that was only admissible against defendant Blount on Count II, (under which Missouri was not charged). In particular, defendant notes that the jury heard evidence that Blount had intended to "rip off" five or six kilos of heroin that belonged to defendant Missouri. In addition, defendant Missouri claims that since this evidence was admissible only on Count II, its admission before the same jury that was to decide the Count I charges against him prejudiced his ability to defend on the basis that he was not involved in a conspiracy to distribute heroin.

The decision as to whether codefendants will be tried separately or jointly is in the discretion of the trial judge. MCL 768.5; MSA 28.1028, *People v Slate,* 73 Mich App 126, 132; 250 NW2d 572 (1977). Where two defendants are tried jointly on a similar charge and, in addition, one of the defendants is also charged for a separate offense, the rule is that separate trials should be granted if the separate offense arises out of a transaction totally

unrelated to the event leading to the common charge. Compare *Slate, supra,* with *People v Billingslea,* 70 Mich App 371; 246 NW2d 4 (1976), *lv den* 398 Mich 808 (1976). Thus, where a codefendant is tried in a joint trial with the defendant for a charge arising out of an "entirely separate incident", an abuse of discretion will be found. *Id.,* 372. However, joinder of distinct criminal charges is permitted against two defendants where (1) there is a significant overlapping of issues and evidence, (2) the charges constitute a series of events, and (3) there is a substantial interconnectedness between the parties defendant, the trial proofs, and the factual and legal bases of the crimes charged. *Slate, supra, People v Ritchie,* 85 Mich App 463; 271 NW2d 276 (1978). Moreover, even the improper joining of defendants for trial under separate offenses is not per se reversible error. See *People v Cochran,* 84 Mich App 710; 270 NW2d 502 (1978), *vacated on other grounds* 407 Mich 934 (1979); *contra, Billingslea, supra.* There must be an affirmative showing of prejudice to substantial rights of the accused. *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976), *People v Miller,* 88 Mich App 210, 222; 276 NW2d 558 (1979).

Applying these factors to the case on appeal, we conclude that the trial judge did not abuse his discretion in denying Missouri's motion for a separate trial. Although there is no genuine interconnection of substantive offenses between the first and second counts as related to Blount and Missouri, there was a significant overlapping of issues and evidence. In addition, though it is not dispositive of the issue, we note that the trial court anticipated a long and complicated trial with the possibility that joinder provided a real benefit to

the courts and the administration of justice. Finally, although evidence relating to the planned "rip-off" of Missouri's five to six kilos of heroin would have been inadmissible at Missouri's trial on Count I if separate trials had been ordered, "necessarily similar evidence and proofs could properly have been placed against [him] in [that] separate trial as were actually placed into evidence here at the complained of joint trial." *Slate, supra,* 136. Under such circumstances, we are not persuaded that the trial court abused its discretion in ordering a joint trial, or that defendant Missouri was actually prejudiced by the joinder which took place. *Id.*

Having found no reversible error on any of the issues raised, we affirm the convictions of defendants-appellants Missouri and Blount.