PEOPLE v PAINTMAN

Docket No. 77-3436. Submitted June 6, 1979, at Lansing.—Decided September 19, 1979. Leave to appeal applied for.

Defendant, Norman Paintman, was charged in the Oakland Circuit Court with four counts of first-degree murder. Prior to trial, a *Walker* hearing was held and William J. Beer, J., ruled that defendant's statements were involuntary and taken in violation of *Miranda*. The prosecutor appealed that determination by leave granted and the Court of Appeals reversed. Defendant applied to the Supreme Court for leave to appeal and was denied leave (397 Mich 885 [1976]). After his trial and conviction on all four counts defendant appeals alleging numerous errors. *Held:*

1. A legal question which has been raised in one appeal may not be raised again in a subsequent appeal after proceedings held on remand to the lower court. The previous decision of the Court of Appeals that defendant's statements were voluntary is controlling.

2. A person may be prosecuted for aiding and abetting without regard to the conviction or acquittal of the principal. Therefore, the trial court did not err in instructing on aiding and abetting first-degree murder despite the fact that the alleged principal was convicted of second-degree murder.

3. The admission of photographs of the injuries suffered by victims of crime is primarily committed to the discretion of the trial court and the issue to be confronted with regard to their admission is whether the photographs are substantially necessary or instructive to show material facts or conditions or are merely calculated to excite passion and prejudice. The trial court did not err in allowing the prosecutor to introduce photographs of the victims to prove that the victims were all shot within just a few seconds, supporting the inference that

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 744 *et seq.*
[2] 21 Am Jur 2d, Criminal Law §§ 127, 128.
[3] 5 Am Jur 2d, Appeal and Error § 816.
[4] 29 Am Jur 2d, Evidence § 260.
[5] 29 Am Jur 2d, Evidence §§ 496, 497, 650.

the shots were fired by two gunmen, contrary to defendant's contention.

4. State of mind, when material, may be shown by testimony of statements made by the individual in question as an exception to the hearsay rule, regardless of the availability of the declarant.

Affirmed.

1. APPEAL AND ERROR — LAW OF THE CASE.

A legal question which has been raised in one appeal may not be raised again in a subsequent appeal after proceedings held on remand to the lower court.

2. CRIMINAL LAW — AIDING AND ABETTING.

A person may be prosecuted for aiding and abetting without regard to the conviction or acquittal of the principal.

3. CRIMINAL LAW — JURY INSTRUCTIONS — AIDER AND ABETTER — PRINCIPAL.

An instruction to the jury on alternative theories of a defendant's guilt—either as a principal or as an aider and abetter—that fails to instruct the jury that a verdict on either theory must be unanimous is not prejudicial to the defendant where he has been convicted as an aider and abetter because the jury could not have reached an improper compromise verdict since those members who felt that the defendant was guilty as the principal would have necessarily also found him guilty as an aider and abetter.

4. CRIMINAL LAW — EVIDENCE — PHOTOGRAPHIC EVIDENCE OF INJURY.

The admission of photographs of the injuries suffered by victims of crime is primarily committed to the discretion of the trial court and the issue to be confronted with regard to their admission is whether the photographs are substantially necessary or instructive to show material facts or conditions or are merely calculated to excite passion and prejudice.

5. EVIDENCE — STATE OF MIND — DECLARATIONS — HEARSAY RULE.

State of mind, when material, may be shown by testimony of statements made by the individual in question as an exception to the hearsay rule, regardless of the availability of the declarant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief

Appellate Counsel, and *Lawrence J. Bunting,* Assistant Prosecuting Attorney, for the people.

*P. E. Bennett,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and V. J. BRENNAN and H. R. CARROLL,* JJ.

V. J. BRENNAN, J. Defendant, Norman Paintman, was convicted by a jury of four counts of first-degree murder, MCL 750.316; MSA 28.548. Defendant was sentenced to life imprisonment on each conviction and brings this appeal by right.

The defendant and one William Wardel Kidd were charged together with the February 23, 1976, premeditated murders of Ronald Brown, Floyd McElahanon, Theodoro Nelson, and Andrea Brown. At trial the medical examiner testified that the victims died of gunshot wounds to the head. One to three wounds were inflicted on each victim; seven wounds in all. Police officers established by their testimony that the four victims had been discovered lying side-by-side on the floor of a Southfield apartment on February 23, 1976. Testimony relating to bullets and shell casings established the probable weapons as a Smith and Wesson revolver and an F.I.E. "Titan Tiger".

The prosecution's evidence also included testimony by Arthur Sailes. Sailes was an ex-narcotics dealer who had frequently purchased narcotics from Floyd McElahanon. Sailes testified that he drove to McElahanon's apartment in Southfield on February 23, 1976, after speaking with McElahanon on the telephone at about noon that day. Arriving in the area of the apartment at approxi-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mately 12:25 pm, Sailes saw the defendant and Kidd leave McElahanon's apartment building. The defendant was carrying a shiny object in his hand. Sailes tried to gain entry into the apartment building by ringing the bell but received no response. He entered the building with a key and went to McElahanon's apartment, finding the door open. Sailes stated that, looking inside, he saw three bodies on the floor and noticed an odor of gunpowder. Sailes stated that he had known William Kidd for a period of time and he had seen Kidd carry a .38-caliber Smith and Wesson revolver. He testified that Kidd had threatened to kill Floyd McElahanon.

Also presented as a part of the prosecution's case was testimony from Southfield Police Captain Edward Ritenour. Ritenour related the substance of defendant's statement given on March 1, 1976, in the Oakland County jail. According to the statement, defendant agreed to go with William Kidd to McElahanon's apartment to hold up McElahanon for money and drugs. Defendant knew that Kidd also intended to kill McElahanon. Defendant also knew that Kidd owed McElahanon money for previous drug dealings. Defendant and Kidd went to McElahanon's apartment building where Kidd gave defendant a handgun. Kidd and defendant then gained entrance to the apartment building, and ultimately into McElahanon's apartment where they forced the people inside to lie on the floor. Kidd "covered" the people on the floor while defendant searched for, and found, a quantity of drugs and money. Then defendant and Kidd shot the persons lying on the floor, and left.

The jury returned a verdict of guilty on all counts. Defendant appeals raising several allegations of error.

The first two allegations of error concern the admissibility of defendant's statement made while in police custody. This precise question was addressed by this Court in a previous interlocutory appeal by the prosecutor. In that appeal the *Walker*[1] hearing in the present case was reviewed on the whole record with the ultimate finding that the statement was voluntary and thus admissible. *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974). Since the prior ruling concerned the same questions of law presented on this appeal, it is the law of the case and is controlling. A legal question which has been raised in one appeal may not be raised again in a subsequent appeal after proceedings held on remand to the lower court. *People v Drew,* 83 Mich App 57; 268 NW2d 284 (1978), *Allen v Michigan Bell Telephone Co,* 61 Mich App 62; 232 NW2d 302 (1975).

Next defendant argues that the trial court erred in instructing the jury that they could find the defendant guilty of aiding and abetting first-degree murder when the alleged principal had been convicted of second-degree murder. The defendant's contention is without merit. A person may be prosecuted for aiding and abetting without regard to the conviction or acquittal of the principal. *People v Mann,* 395 Mich 472, 477-478; 236 NW2d 509 (1975), *People v Palmer,* 392 Mich 370, 378; 220 NW2d 393 (1974).

Next defendant claims on appeal that the following instruction was erroneous:

"It is charged in this case that Norman Paintman either deliberately committed the crime charged, that is either murder in the first degree, or that he intentionally aided and assisted another in the commission of

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

the crime. All persons who aide *[sic]* or assist in the commission of a crime are as libel *[sic]* as if they had directly committed the crime and may be convicted of the principal offense or as an aider and abettor.

"Before you may convict, you must be convinced of the following beyond a reasonable doubt: First, the crime charged must have been committed either by the Defendant or some other person; second, the Defendant must have performed acts or given encouragement which aided or assisted the commission of that crime either before or at the time of the commission of the crime; third, the Defendant must have intended the commission of the crime charged at the time of giving aid or encouragement."

It is the defendant's contention that the rule of *People v Olsson,* 56 Mich App 500; 224 NW2d 691 (1974), requires reversal where a single offense is based on two alternative theories of guilt and the jury has not been instructed that it must unanimously agree on the theory upon which it finds the defendant's guilt. In *Olsson,* the defendant was charged with murder in the first degree. The jury was instructed to agree unanimously on a verdict and was charged that a conviction of first-degree murder could follow from a theory of felony murder or from a theory of premeditated murder. In its explanation of the fault in the instruction in that case the Court noted:

"We feel that these instructions did not adequately inform the jury of their duty to make a unanimous finding as to whether defendant was guilty of premeditated murder or murder in the perpetration of a felony. We agree with defendant that on the basis of these instructions, it is possible that the jury arrived at a compromise verdict, that is, some members of the jury may have felt defendant was guilty beyond a reasonable doubt of murder in the perpetration of a robbery or larceny while the remaining members may have felt

that defendant was guilty beyond a reasonable doubt of premeditated murder. Such a verdict would not be unanimous and could not convict defendant. GCR 1963, 512.1." 56 Mich App 500, 506.

However, the determinative factor for the *Olsson* majority was a fatal lack of evidence on the underlying felony (robbery), and the Court held that no instruction on the felony murder theory was proper in the case. 56 Mich App 500, 504.

In three other cases this Court has held that where the evidence of felony murder and premeditated murder is sufficient to go to the jury, the failure to require the jury to unanimously decide between the theories is either not error or is harmless error. *People v Embree,* 70 Mich App 382; 246 NW2d 6 (1976), *People v Embree,* 68 Mich App 40; 241 NW2d 753 (1976), *People v Fullwood,* 51 Mich App 476; 215 NW2d 594 (1974).

In *People v Burgess,* 67 Mich App 214; 240 NW2d 485 (1976), as in the case at bar, the guilt of the defendant rested on alternative theories of participation as principal or as aider and abettor. The evidence was sufficient to support guilt under either theory. The defendant admitted that the coactor was guilty as a principal but denied having any part in the assault. This Court found no error in jury instructions which did not require the jurors to unanimously decide whether the defendant was a principal or an aider and abettor.

Next the defendant argues that the trial court erred in admitting photographs of the victims of the shootings. We disagree.

The admission of photographs of the injuries suffered by victims of crime is primarily committed to the discretion of the trial court. *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972). That case rejected the theory that the prosecution

is bound to pursue alternative proofs before resorting to photographic evidence. In *People v Falkner,* 389 Mich 682, 685; 209 NW2d 193 (1973), the Court stated that the issue to be confronted in the admission of photographic evidence was whether the photographs were "substantially necessary or instructive to show material facts or conditions" or were merely "calculated to excite passion and prejudice".

In the case at bar the defendant addressed the jury before the opening of proofs, setting forth his claim that only Kidd had participated in the killings and that the defendant had not been present when the shootings occurred. The photographs were advanced by the prosecution as proof that all four victims were killed in a matter of just seconds, supporting the inference that the fatal shots were fired by two gunmen. The prosecutor's closing argument asserted that the photographs showed that the vicitms had not attempted to rise from the floor or struggle while the shots were being fired. In this light we cannot say that the admission of the photographs constituted an abuse of discretion.

Contrary to the defendant's next assertion, we find nothing improper in the prosecutor's closing argument. The prosecutor did not inform the jury of the existence or outcome of the *Walker* hearing. With the validity and credibility of the defendant's confession under attack, claiming police fabrication, it was not unfair for the prosecution to show the facts and circumstances of the confession which would lend credibility to it. The jury was left with the ultimate task of deciding whether the statement was reliable.

The prosecutor's comment regarding the photographs was the subject below for a motion for

mistrial. Review of the comment indicates that the prosecutor was using the photographs to advance a part of his case, specifically, that the shots were fired so quickly that two gunmen must have been involved. There is nothing in this argument that is improper.

Defendant next challenges the admission of testimony concerning threats made against a victim by William Kidd. The state of mind of William Kidd was relevant to his intent in killing the victims and therefore to the defendant's guilt as an aider and abettor. A declaration of an existing state of mind is admissible as an exception to the hearsay rule. *Hazen v Elmendorf,* 365 Mich 624; 113 NW2d 892 (1962). Under this exception availability of the declarant is irrelevant. See MRE 803(3).

As to the remaining allegations of error we find that the abbreviated reference by Captain Ritenour to the defendant's contemplation of suicide has not been shown to be sufficiently prejudicial to warrant a determination that the trial judge abused his discretion in denying defendant's motion for mistrial. In addition the district judge neither applied a faulty legal standard nor otherwise abused his discretion in binding the defendant over for trial on the charge of first-degree murder. Finally, the defendant's claim that the corpus delicti of first-degree murder had not been shown by competent evidence before his confession was introduced is without merit.

The defendant's conviction is affirmed.