## PEOPLE v LUCAS

Docket No. 68613. Submitted January 12, 1984, at Grand Rapids.— Decided August 9, 1984. Leave to appeal denied, 421 Mich 854.

Defendant, Robert L. Lucas, was convicted following a jury trial in Clare Circuit Court of two counts of armed robbery and one count of second-degree criminal sexual conduct arising from sexual conduct with the female victim of the robbery. The trial court, Kurt N. Hansen, J., sentenced defendant to concurrent terms of from 20 to 40 years imprisonment on each armed robbery conviction and from 10 to 15 years on the criminal sexual conduct conviction. Defendant appeals. *Held:*

1. The testimony of Deputy Sanborn, that he had investigated the alibi of another suspect, George Thompson, and had found no reason to seek a warrant naming him, was inadmissible hearsay.

2. The trial court's ruling that Deputy Sanborn's testimony was admissible under the state of mind exception to the hearsay rule was erroneous. Allowing him to testify as to his state of mind compounded the error because it erroneously placed the prestige of the sheriff's office behind Thompson's alibi.

3. Under the circumstances of this case, the right of the defendant to have the jury determine the credibility of Thompson's alibi witnesses, uninfluenced by the opinions of the deputy sheriff, was a very substantial right.

4. Defense counsel properly objected to the deputy's testimony. Defendant was deprived of a fair trial as well as of his right to confront witnesses. This constitutes plain error requiring reversal.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 496, 497, 650 *et seq.*
[2] 75 Am Jur 2d, Trial § 261.
   Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused—modern cases. 88 ALR3d 449.
[3] 5 Am Jur 2d, Appeal and Error §§ 601-604.
[4] 30 Am Jur 2d, Evidence § 1148.

1. EVIDENCE — HEARSAY — STATE-OF-MIND EXCEPTION — RULES OF EVIDENCE.

   Evidence of a declarant's state of mind is admissible under the state of mind exception to the hearsay rule only when the declarant's state of mind is an issue in the case (MRE 803[3]).

2. CRIMINAL LAW — PROSECUTING ATTORNEYS — IMPROPER ARGUMENT — EVIDENCE.

   It is error for a prosecutor to place the prestige of his office or that of the police behind the contention that a defendant is guilty; prosecutors and police may not vouch for the falsity of evidence that, if true, could raise a reasonable doubt as to the defendant's guilt.

3. EVIDENCE — APPEAL — PRESERVING QUESTION — PLAIN ERROR — RULES OF EVIDENCE.

   Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and, in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; notice may be taken of plain errors affecting substantial rights although they were not brought to the attention of the court (MRE 103).

4. CRIMINAL LAW — WITNESSES — ACCOMPLICES.

   Testimony of an accomplice is recognized as being suspect and is to be received only with care and caution.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Thomas P. McLaughlin, Jr.,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *P. E. Bennett),* for defendant on appeal.

Before: MacKENZIE, P.J., and BEASLEY and K. B. GLASER, JR.,* JJ.

PER CURIAM. At the end of a three-day trial, defendant was convicted of two counts of armed robbery, MCL 750.529; MSA 28.797, and one count

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

of second-degree criminal sexual conduct, MCL 750.520c(1)(c); MSA 28.788(3)(1)(c), arising from sexual conduct with the female victim of the robbery. He appeals as of right from those convictions, having been sentenced to imprisonment for two concurrent terms of from 20 to 40 years on each armed robbery conviction and from 10 to 15 years on the criminal sexual conduct conviction.

Sometime after 10 p.m., April 6, 1982, Esther Thiede, age 73 and John Thiede, age 89, were awakened by their doorbell. Esther Thiede looked and thought she saw Larry Fox, a young man who had done odd jobs for her and who owed her some money. She went out on the porch, opened the door and a man wearing a ski mask carrying "a club or stick or something" came in and knocked her to the floor. John Thiede came out and the masked man struck him several times with the stick, went into the house and pulled the phone out of the wall. The lights also went out. A second person came in. The second man tied Esther up with the telephone wire on instructions from the first man. While he was doing so, the first man pulled open her pajama top and "grabbed a hold of (her) * * * breasts" and "put his hand down inside (her) pajama trousers". The men took the couples' wallets with $630 in cash in them.

During the robbery the first man called the second man "George". The Thiedes both recognized the voice of one of the robbers as being that of Larry Fox, who had done some odd jobs for them in the past. At the trial they testified that Fox's voice was that of the second man. However, Deputy Sprague testified that Mrs. Thiede told him more than once that the second man didn't do any talking. When they left, Esther walked to a neighbor's home and called the sheriff.

Larry Fox claimed that he was the second man

and that defendant Robert Lee Lucas was the first man.

Fox further testified that defendant broke a stick off the side of the trail on the way to the Thiede house. Fox claimed that this was the weapon defendant used. No weapon was introduced in evidence, but it was described by both of the Thiedes. Mr. Thiede said, "it looked like a club". Mrs. Thiede testified that it looked like an old weathered tool handle but "could have been a branch without too many knots in it".

Responding to Mrs. Thiede's call, Deputy Sprague met a speeding car going the other way. Thinking it might be connected with the robbery, he turned around and was able to identify the car as belonging to George Thompson, a friend of Larry Fox. Officer Sprague testified that Thompson admitted that he had pulled off on a side road and shut off his lights to avoid apprehension. Thompson denied doing so on the witness stand. Thompson was located shortly thereafter at his home and said that he was fleeing from Deputy Sanborn because he did not have license plates for the car. Thompson's house was searched and an axe or sledge handle was found and taken. It was never shown to the Thiedes as far as the record discloses. Thompson stated that he had been with two other people all evening. Thompson testified at the trial. His alibi witnesses did not testify. No warrant was ever issued for him. It was one of defendant's theories that Fox and Thompson had been the two in the house and that he was not there at all. Defendant produced three alibi witnesses of his own: his wife, his wife's sister and sister's husband. They testified that defendant was playing cards with them after 8:30 p.m. and could not have been at the house in question.

Deputy Sanborn was allowed to testify to his investigation of Thompson's alibi as follows:

"*Q. [By Mr. Jacobson, Prosecutor]:* Did you ever interview George Thompson in this manner?

"*A.* Yes, sir.

"*Q.* Did you ever go to his house?

"*A.* Yes, sir.

"*Q.* When was that?

"*A.* Several days after the robbery armed.

"*Q.* Did you ever seek to find out where Mr. Thompson was on the night of April 6th?

"*A.* Yes, sir.

"*Q.* At the time of the robbery?

"*A.* Yes, sir.

"*Q.* Did you interview people concerning that?

"*A.* Yes, sir.

"*Q.* Were you satisfied with your interviews in that matter?

"*A.* Yes, sir.

"*Q.* More than one person interviewed in that respect?

"*A.* Pardon?

"*Q.* Was more than one—

"*Mr. Bicknell [defense counsel]:* Your Honor, I can't even hardly hear the Prosecutor.

"*The Court:* Okay. Speak up a little.

"*Q. [By Mr. Jacobson]:* Was more than one person interviewed with respect to where Mr. Thompson was that evening?

"*A.* Yes, sir.

"*Q.* And your investigation confirmed itself in that regard?

"*Mr. Bicknell:* Your Honor, I'm going to object to this. I think if he is going to ask him something, he can't ask him whether he is satisfied with it. We don't even know what he found out. I think that there is no basis for conclusion.

"*The Court:* Sustained. There is not a sufficient foundation laid.

"Q. [By Mr. Jacobson]: Did you ever check out an alibi for Mr. Thompson?

"A. Yes, sir.

"Q. Was the alibi supported—

"Mr. Bicknell: I object. That is not proper.

"Mr. Jacobson: It certainly is proper, Judge.

"The Court: Excuse me. I'll tell you what. Excuse me just a moment. Members of the jury, we're going to take the mid-morning recess at this time. It will be about a 15-minute recess, so you're excused at this time. Don't discuss the case among yourselves.

"(The following proceedings were held in open court outside the presence of the jury.)

"The Court: What is your objection, Mr. Bicknell?

"Mr. Bicknell: The question, as I recall, your Honor, was did George Thompson have an alibi, and I don't think—I think that the foundation is that if he talked to somebody and verified that they said that he was some place else, that is perfectly all right, but he can't just come to the ultimate conclusion and say, yeah, this guy had a good alibi.

"The Court: I don't think that's what was asked. What was asked, did you check out whether or not he had an alibi, and the answer was yes, and then were you satisfied with that alibi. I believe that was the question. You could read it back.

"Mr. Bicknell: That was the one before, I believe, your Honor.

"The Court: Let's check it back.

"(The court reporter read back the following two questions:)

"Q. Did you ever check out an alibi for Mr. Thompson?

"A. Yes, sir.

"Q. Was the alibi supported—

"The Court: I stand corrected. What do you say is objectionable about that?

"Mr. Bicknell: Well, I think we're entitled as a prerequisite to that is who was the alibi. I mean—

"Mr. Jacobson: It's proper cross-examination, Judge. I don't have to bring that up on direct.

"*Mr. Bicknell:* He can't come to the ultimate conclusion.

"*Mr. Jacobson:* We're dealing with his investigation, Judge, and to a great extent his investigation contains an officer's state of mind, and I think it is a proper question. If he wants to go into whether he had a good reason to think that, Mr. Bicknell can ask him on cross-examination.

"*The Court:* For the reasons stated in the objection, the Court will overrule the objection. We'll be in recess until quarter of eleven.

"*(Recess taken at 10:25 a.m.)*

"*The Court:* Will counsel approach the bench, please?

"*(Both counsel approached the bench.)*

"*The Court:* Bring the jury in, please.

"*(The following proceedings were held in open court in the presence of the jury.)*

"*(People's exhibits 19 and 20 were marked for identification.)*

"*The Court:* You may proceed.

"*Q. [By Mr. Jacobson]:* Officer Sanborn, when we took the mid-morning break, I had asked you some questions, I believe, concerning your investigation and, in particular, whether or not you had investigated a claimed alibi for Mr. Thompson.

"*A.* Yes, sir.

"*Q.* Did you investigate a claimed alibi for Mr. Thompson?

"*A.* Yes, sir.

"*Q.* Did you talk to anybody?

"*A.* Yes, sir.

"*Q.* More than one person?

"*A.* Yes, sir.

"*Q.* Who were those people?

"*A.* Paula Krawczynski, and I believe it was Nancy Krawczynski.

"*Q.* And do you know whether or not these people have been subpoenaed to be available for court today?

"*A.* I believe so, sir.

"*Q.* After your investigation—

"*Mr. Bicknell:* Your Honor, I object to that. I think it

is improper inference to this jury. The Prosecutor's witnesses are endorsed, and they are not endorsed as witnesses for the Prosecutor.

"*Mr. Jacobson:* I guess the question I asked if they were subpoenaed to be available for court.

"*Mr. Bicknell:* I don't think that he has a right to go as a part of his investigation or his testimony in this case to go into what I'm doing to try to defend my client, your Honor, and imply to the jury it is something that he is trying to do.

"*The Court:* Well, it is irrelevant as to who you have subpoenaed to be here in court other than endorsed witnesses, and apparently these witnesses are not endorsed.

"*Mr. Jacobson:* They're not res gestae witnesses.

"*The Court:* That's right, but they also have not been endorsed on the information.

"*Mr. Jacobson:* Correct.

"*The Court:* As a consequence, it would be irrelevant, the testimony concerning who has been subpoenaed or who has not been subpoenaed, and the jury is to disregard the answer that was given to the last question to the witness.

"*Q. [By Mr. Jacobson]:* As the investigating officer, is part of your job to make requests for warrants to the Prosecutor's office?

"*A.* Yes, sir.

"*Q.* Did you determine that *[sic]* would not be appropriate to ask for a warrant for Mr. Thompson in this matter?

"*A.* Yes, sir."

In his closing argument the prosecutor made use of Deputy's Sanborn's opinion:

"Now, Officer Sprague testified that he saw a car, and what do you do when you see a car? Well, going a little too fast and there was a robbery, so he thought, okay, I guess something to check out, and eventually they tracked it down, and the car didn't have the registration like it was suppose to. And they talked to Mr. Thompson, and Mr. Thompson said: I was over at—and

I don't know Paula or Debbie or whatever—and Officer Sanborn has testified that he checked out that alibi or statement of where somebody was—and that was a couple of people he talked to. Mr. Thompson mentioned that the mother was there, and at that point Mr. Thompson didn't become a suspect. He was no longer a suspect. And at one time he was a suspect because it's a possibility. He is not on trial here, although the defendant might want in your deliberations to make him the one at trial. It just happened that Mr. Thompson was somebody the police checked, and a broken handle was found in his house, and the jurors can consider themselves whether or not they, for example, have ever had a broken handle at their house, if that's a sign of a crime."

Appellant contends that the testimony of Officer Sanborn, that he has investigated George Thompson's alibi and had not sought a warrant for that reason, was inadmissible hearsay. We believe it was. The sole purpose of the question was to place before the jury the fact that the alibi of Mr. Thompson had been verified by the witnesses. The officer would not have been permitted to testify to what the alibi witnesses had said directly and the effect of this series of questions was to place that information before the jury, buttressed by the conclusions of the police officer that he believed Thompson's alibi.

The court's ruling that the testimony was admissible under the state of mind exception to the hearsay rule pursuant to MRE 803(3) was also error. Only when the declarant's state of mind is an issue in the case is evidence of his state of mind admissible. *People v White,* 401 Mich 482, 502-503; 257 NW2d 912 (1977). The state of mind of Deputy Sanborn should not have been an issue in this case. Allowing him to testify as to his state of mind compounded the error because it placed the prestige of the sheriff's office behind Thompson's

alibi. The prosecutor's final argument buttressed it still further. It is error for the prosecutor to place the prestige of his office or that of the police behind the contention that a defendant is guilty. *People v Iaconnelli,* 112 Mich App 725; 317 NW2d 540 (1982). We perceive no difference in principle when prosecutors and police vouch for the falsity of evidence that, if true, could raise a reasonable doubt as to defendant's guilt.

MRE 103 provides in pertinent part:

"(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context;

*   *   *

"(d) Plain error. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

The entire case depended on whether the jury believed Fox beyond a reasonable doubt. The only corroborating evidence was the testimony of Fox's father and mother who testified that defendant and Fox left their house less than a mile from the Thiede's residence between 9 and 10 o'clock. Thompson also lived very close to Fox's home. The police fixed the time of the crime at between 10:30 and 11:04 p.m. Fox had two prior felony convictions himself and had been identified by the Thiedes.

It is well-settled that the testimony of an accomplice is recognized as being suspect and is to be received only with care and caution. *People v*

*McCoy,* 392 Mich 231, 236; 220 NW2d 456 (1974). Fox's testimony is a good example of the reason for the rule. He was on probation at the time and had prior convictions for breaking and entering and larceny of a purse. His testimony placed all the responsibility for the crime on Lucas, picturing himself as acting only under duress.

The sentencing transcript discloses Lucas's criminal record of which the police were obviously aware. It included an attempted larceny, a "theft by taking" and an attempted fourth-degree criminal sexual conduct conviction. This made him a logical favorite suspect for the police. Fox was unquestionably trying to please the police and save his own skin. He was more evasive on the issue at the trial, but at the preliminary examination he testified as follows on cross-examination:

"*Q.* Do you have any idea why you have not been arrested and prosecuted for that crime?

"*A.* Yes, I do.

"*Q.* Why?

"*A.* Because I'm a state witness.

"*Q.* Have you been told that?

"*A.* Yes, I have.

"*Q.* By whom?

"*A.* By a subpoena piece of paper and by Mr. Sandborn *[sic].*

"*Q.* And—

"*A.* And Mr. McLaughlin.

"*Q.* And what was the substance—make sure I understand this. Were you told that if you give testimony you will not be charged and prosecuted for this crime?

"*A.* I was told nothing but they will give me help in any kind of possible way, but no promises would be made.

"*Q.* I see, but is it your understanding that you won't be prosecuted as long as you can testify and Mr. Lucas is convicted for this crime, is that your understanding?

"*A.* Yes, that's my understanding.

"*Q.* Do you believe that this would be the case, that you would not *[sic]* be charged with this crime if you failed to testify?

"*A.* Yes, I do.

"*Q.* So that if you refused to testify, you believe then that you would be charged and prosecuted for this crime?

"*A.* Yes, I do."

The police and prosecutor deny any such arrangement, but at the time of trial, five months after the crime, in spite of his confession, Fox had not been arrested or charged with anything arising out of the crime.

Defendant relied on the theory that it was Thompson, and not he, who accompanied Fox. There was substantial circumstantial evidence implicating Thompson. Thompson lived near Fox, knew him and admitted that he had been over to see Fox briefly that same night. But he alleged an alibi and the police believed it, and all of the other evidence against Thompson was thereby rendered ineffective.

The defendant was not required to prove Thompson guilty beyond a reasonable doubt. He needed only to raise in the minds of the jury a reasonable doubt about Thompson's alibi. Coupled with the other evidence against Thompson, this could well have won defendant an acquittal.

Under the circumstances of this case, the right of the defendant to have the jury determine the credibility of Thompson's alibi witnesses, uninfluenced by the opinions of the deputy sheriff, was a very substantial right. The defense counsel properly objected. In any case, defendant was deprived of a fair trial as well as his right to confront witnesses. This constitutes plain error requiring

reversal. *People v Derrick Smith,* 87 Mich App 584, 590; 274 NW2d 844 (1978).

In view of this result, it is unnecessary to address the other issues raised by defendant.

Reversed and remanded for further proceedings consistent with this opinion.