# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RODERICK DENNIS GIBSON,

       Defendant-Appellant.

UNPUBLISHED
February 3, 2015

No. 313890
Wayne Circuit Court
LC No. 11-009271-FC

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JERMAR WYNEAL GIBSON,

       Defendant-Appellant.

No. 315933
Wayne Circuit Court
LC No. 11-009271-FC

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DUANE DONTA THOMAS,

       Defendant-Appellant.

No. 316473
Wayne Circuit Court
LC No. 11-009271-FC

Before: CAVANAGH, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

In September 2012, a jury convicted defendant Roderick Gibson ("Roderick") of three counts of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Roderick was tried jointly

-1-

with defendants Duane Thomas ("Thomas") and Jermar Gibson ("Jermar") before a single jury, but the jury was unable to reach a verdict with respect to Thomas and Jermar, resulting in a mistrial for those two defendants. Thomas and Jermar were retried in March 2013, again before a single jury, which convicted both defendants of three counts of first-degree premeditated murder and also convicted Thomas of felony-firearm (third offense). All three defendants were sentenced to three terms of life imprisonment without parole, to be served concurrently. Roderick also received a consecutive two-year term of imprisonment for his felony-firearm conviction and Thomas received a consecutive ten-year term of imprisonment for his felony-firearm (third offense) conviction. All three defendants appeal by right; we affirm in each appeal.

Defendants' convictions arise from the June 4, 2011, shooting deaths of Curtis Burnett, Gary Owens, Jr., and Shemar Johnson. The prosecution's theory was that the shooting was a setup, arranged by Jermar, because he owed Owens a substantial amount of money. After Jermar made arrangements to meet with Owens, Owens arrived in a vehicle with Burnett and Johnson. Jermar flagged down Owens's car. When the car stopped, Roderick and Thomas both proceeded toward the car and fired guns into the vehicle, killing all three occupants. Thomas also received a gunshot wound during the offense. The prosecution's primary witness at trial was Cleophus Pye, who had known all three defendants for many years. Pye claimed that he heard Roderick and Jermar planning the crime beforehand, and witnessed the actual shootings. A fourth codefendant, Omar Johnson, was also tried jointly with the other three defendants at the original trial in September 2012, but he opted for a bench trial. Omar was charged for his role in assisting the defendants after the shooting. The trial court found Omar guilty of tampering with evidence, MCL 750.483a, accessory after the fact, MCL 750.505, and felony-firearm.

## I. DOCKET NO. 313890: RODERICK GIBSON'S APPEAL

### A. MISTRIAL

Roderick first argues that the trial court erred in denying his motion for a mistrial. The motion was brought after a police officer, Johnell White, disclosed during his testimony that he was called away from his investigation of the shooting scene to meet with an anonymous person who claimed to have witnessed the shooting. After a defense objection, the parties discussed the matter outside the presence of the jury. Information about the anonymous person was first revealed to the prosecutor shortly before Officer White testified, but the prosecutor did not disclose this information to defense counsel before Officer White was called to testify. The trial court agreed that any statements by the anonymous person would be inadmissible hearsay, and thus precluded the admission of any statements.[1] The court also prohibited the prosecutor from eliciting further testimony about the anonymous person for the purpose of explaining what Officer White did after meeting with the anonymous person. No further references to the anonymous person were made in the jury's presence. The trial court concluded that the limited

---

[1] The court was informed that the anonymous person had identified Thomas and Roderick as the shooters.

testimony regarding the anonymous person that had already been presented was not prejudicial to Roderick and, accordingly, denied his motion for a mistrial.

A trial court's decision to grant or deny a mistrial is reviewed for an abuse of discretion. *People v Rutherford*, 208 Mich App 198, 202; 526 NW2d 620 (1994); *People v Blackburn*, 94 Mich App 711, 714; 290 NW2d 61 (1980). A mistrial is warranted only when an error or irregularity in the proceeding prejudices the defendant and impairs his ability to receive a fair trial. *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009); *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). A mistrial should be granted only when the prejudicial effect of an error cannot be removed in any other way. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

The jury heard only that Officer White had left the crime scene to go to another location to meet with an apparent witness to the shooting. No evidence was offered indicating what this anonymous person may have heard or seen, or how the officer's encounter with the witness impacted the case. Contrary to what Roderick argues, there is no indication that any statements by this anonymous person were admitted at trial. Indeed, the trial court agreed that any statements by the person would be inadmissible hearsay and thus could not be admitted. And because the anonymous person did not testify and no statement from the anonymous person was admitted, there was no violation of Roderick's right of confrontation. The trial court also prohibited further inquiry regarding the anonymous person for the purpose of explaining Officer White's actions after meeting with the anonymous person. Under the circumstances, there is no basis for concluding that the mere reference to the anonymous person was prejudicial to Roderick. Accordingly, the trial court did not abuse its discretion in denying Roderick's motion for a mistrial.

## B. DISCOVERY

Roderick next argues that the prosecutor's failure to produce during discovery information regarding the police department's efforts to canvass the neighborhood after the shooting requires reversal. "A trial court's decision regarding discovery is reviewed for [an] abuse of discretion." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003).

At trial, the officer in charge, Derrick Maye, testified that the police did not canvass the neighborhood for witnesses on the day of the shooting because it was daylight outside and many people were outside, thus allowing anyone involved or those close to the shooters to see who was talking to the police. Accordingly, no canvass sheets were compiled. Officer Maye explained that he returned at some later time to canvass the neighborhood for any additional witnesses. When defendants complained that they did not receive any canvass sheets for this later activity, Officer Maye explained that no sheets were prepared, but he acknowledged that information about his additional canvassing efforts could be found in his activity logs. The trial court ordered that the activity logs be provided to defendants before Officer Maye resumed testifying. When testimony resumed the next day, Officer Maye testified that his efforts to locate witnesses were not successful. Defendants did not further object to Officer Maye's testimony after they received the activity logs.

MCR 6.201(J) provides a trial court with various options for responding to a discovery violation in a criminal case. The rule provides:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

In this case, the trial court permitted the defendants to inspect Officer Maye's activity logs, material that had not previously been produced, before Officer May resumed testifying. Because no canvass sheets were ever compiled, there were no canvassing records to produce during discovery. It is unclear whether the activity logs were required to be produced. Assuming that they were, we conclude that the trial court's remedy of furnishing that information to defense counsel before Office Maye resumed testifying was adequate to address the situation and, therefore, the trial court did not abuse its discretion.

The testimony at trial indicated that the additional canvassing of the neighborhood did not lead to any new evidence, either exculpatory or inculpatory, and Roderick does not explain how the late disclosure of the activity log information prejudiced his case. To the extent Roderick argues that the trial court should have granted a continuance to provide him with more time to review the records, he does not explain why more time was necessary, and he did not request any additional time when the records were turned over. A trial court does not abuse its discretion by failing to grant a continuance in the absence of a request. *People v McCrady*, 213 Mich App 474, 481; 540 NW2d 718 (1995).

## C. PROSECUTORIAL MISCONDUCT

Roderick next argues that a new trial is required because the prosecutor improperly vouched for the credibility of Pye, her primary witness, during closing argument. Because there was no objection to the prosecutor's comments at trial, this issue is unpreserved. We review an unpreserved claim of prosecutorial misconduct for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274-275; 662 NW2d 836 (2003).

Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). It is improper for a prosecutor to vouch for the credibility of her witnesses by suggesting that she has some special knowledge about the witnesses' truthfulness. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, the prosecutor is free to argue that a witness is credible based on the evidence and reasonable inferences drawn from the evidence. *Id*. at 454-455.

Viewed in context, the prosecutor's comments did not refer to any personal beliefs or special knowledge about Pye's credibility. Rather, the prosecutor argued that Pye was a credible witness for reasons grounded in the evidence. At trial, Pye explained that he delayed in coming forward because he feared for his life and for his family's safety. He also testified that he had known the defendants all of his life and considered them to be family. It was not inappropriate for the prosecutor to emphasize these circumstances in arguing that Pye's testimony was credible. Accordingly, the prosecutor's remarks were not improper and there was no error, plain or otherwise. We also reject defendant's related ineffective assistance of counsel argument. Because the prosecutor's remarks were not improper, defense counsel's failure to object was not objectively unreasonable. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. DOCKET NO. 315933: JERMAR GIBSON'S APPEAL

### A. SUFFICIENT EVIDENCE

Defendant Jermar Gibson observes that there was no evidence that he directly participated in shooting any of the victims, and argues that the evidence was insufficient to convict him of three counts of first-degree premeditated murder under and aiding and abetting theory. We disagree.

"In determining whether the prosecution presented sufficient evidence to sustain a conviction, this Court must construe the evidence in the light most favorable to the prosecution and consider whether a rational trier of fact could have determined that all the elements of the crime were proven beyond a reasonable doubt." *People v Schaw*, 288 Mich App 231, 233; 791 NW2d 743 (2010). Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v John Williams, Jr*, 268 Mich App 416, 419; 707 NW2d 624 (2005). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

A conviction for first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id.* at 588. Premeditation and deliberation can be inferred from the surrounding circumstances, but the inferences cannot be speculative and they must have support in the record. *People v Plummer*, 229 Mich App 293, 301; 581 NW2d 753 (1998). Factors that may be considered in establishing premeditation include (1) the previous relationship between the defendant and the victim, (2) the defendant's actions before and after the crime, and (3) the circumstances of the killing, including the weapon used and the location of the wounds inflicted. *Id*. at 300.

A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39. To prove that a defendant aided and abetted the commission of a crime, the prosecution must show that (1) the crime charged was committed by the defendant or another person, (2) the defendant performed acts or gave encouragement that

assisted in the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). An aider and abettor's state of mind may be inferred from all of the facts and circumstances of the crime. *Carines*, 460 Mich at 757. Factors that can be considered include a close association between the principal and the defendant, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Id.* at 757-758. "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992).

Although Jermar argues that he was merely present when Roderick and Thomas shot the victims, the evidence supported an inference that Jermar actively assisted in the commission of the offenses. The evidence indicated that Jermar lured the victims to the location where Thomas and Roderick were waiting for them, and that Jermar announced the victims' arrival just before Roderick and Thomas began their siege on the vehicle. This evidence supported an inference that Jermar was acting in concert with Roderick and Jermar. The evidence also supported an inference that Jermar had a motive to set up the confrontation because he owed a substantial amount of money to Owens. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Jermar aided and abetted the premeditated killing of the three victims.

## B. THE CODEFENDANT'S STATEMENT

Jermar next argues that he was denied a fair trial by the admission of Roderick's statement before the offense, during which Roderick asked Pye to move his car because "it's about to go down." Jermar argues that this statement was not admissible against him, and that its admission violated his rights under the Confrontation Clause. Jermar concedes that there was no objection to the statement at trial, but argues that his defense attorney was ineffective for failing to object.

Jermar's unpreserved Confrontation Clause claim is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 761-767. To establish ineffective assistance of counsel, Jermar must show that his counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced him that he was denied the right to a fair trial; he must also overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, Jermar must show that there is a reasonable probability that, but for his counsel's error, the result of the proceeding would have been different. *People v Johnnie Johnson, Jr*, 451 Mich 115, 124; 545 NW2d 637 (1996).

The Confrontation Clause applies to out-of-court statements introduced at trial. However, the Confrontation Clause applies only to statements that are testimonial in nature. *People v Taylor*, 482 Mich 368, 374, 377-378; 759 NW2d 361 (2008). Statements are testimonial when made under circumstances that would lead an objective declarant to reasonably believe that they would be available for use at a later criminal proceeding. *Id.* at 377-378. Roderick's statement to Pye was not made under circumstances suggesting a reasonable belief

-6-

that it would be used at a later trial. Roderick made the informal statement to Pye, a friend. The statement was not made in a testimonial capacity or in the context of any pending or contemplated legal proceeding. Accordingly, admission of the statement did not violate Jermar's rights under the Confrontation Clause. *Id*. at 378. The admissibility of the statement is instead governed by the Rules of Evidence. *Id.*

Roderick's statement was admissible under MRE 803(3), as a statement of the declarant's then existing state of mind. The exception in MRE 803(3) is only available when the declarant's state of mind is at issue. *People v Lucas*, 138 Mich App 212, 220; 360 NW2d 162 (1984). The codefendants' states of mind were at issue with regard to the charges against Jermar because the jury had to determine the codefendants' intent, and whether Jermar's actions were consistent with the codefendants' intent. Moreover, it was not necessary for Jermar to be present when Roderick made the statement to Pye. See *People v Brownridge (On Remand)*, 237 Mich App 210, 216-217; 602 NW2d 584 (1999); *People v Ortiz-Kehoe*, 237 Mich App 508, 517; 603 NW2d 802 (1999); *People v Paintman*, 92 Mich App 412, 420; 285 NW2d 206 (1979), rev'd on other grounds 412 Mich 518 (1982).

Even if the statement qualifies as hearsay, however, Jermar has not overcome the presumption that his attorney did not object as a matter of sound strategy. Jermar's defense theory was that he was merely present and did not participate in the offense, which was committed solely by Roderick and Thomas. The disputed statement implicated Roderick in the offenses by supporting an inference that he had planned the crime. Roderick did not refer to Jermar or anyone else in his statement, and Pye testified that he did not observe any communication between Jermar and Roderick before the shooting. Under these circumstances, defense counsel reasonably may have concluded that the statement was not harmful to Jermar because it was consistent with the defense theory that Roderick was responsible for the commission of the crime, and the statement did not implicate Jermar. Thus, defense counsel's failure to object was not objectively unreasonable.

Although Jermar asks this Court to remand the case for an evidentiary hearing "to determine certain facts and to clarify circumstances that aren't apparent in the record," he does not explain what facts or circumstances need to be determined or clarified. Accordingly, we deny Jermar's request for an evidentiary hearing.

## C. GREAT WEIGHT OF THE EVIDENCE

Jermar lastly argues that he is entitled to a new trial because the jury's verdict was against the great weight of the evidence. Because Jermar did not preserve this issue by raising it in a motion for a new trial, our review is limited to plain error affecting Jermar's substantial rights. *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011); *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

The sole basis for Jermar's great-weight-of-the-evidence argument is that Pye was not a credible witness. In *Musser*, 259 Mich App at 218-219, this Court explained:

The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that

-7-

it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). "[U]nless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-646 (citation omitted).

Although it is apparent that Pye was a critical prosecution witness and that the jury's verdict was dependent upon its finding that Pye was credible, there is no basis for concluding that Pye's credibility was so far impeached that it was deprived of all probative value. Independent ballistics and medical evidence was consistent with Pye's testimony that at least two different weapons were used during the offense. The physical evidence indicated that both a high-powered or high-velocity weapon, such as an AK-47, and another gun, such as a .38 caliber handgun, were used, which was consistent with Pye's account of the shooting. Whereas Pye testified that Thomas, using a .38 caliber handgun, shot the driver, the medical testimony indicated that the driver's wounds were more consistent with having been caused by an AK-47. However, Pye also testified that Thomas and Roderick were both firing into the vehicle at the same time, so it was not implausible for the jury to find that their gunshots struck victims at opposite sides of the vehicle. Pye also testified that Jermar told him the day after the shooting that the shooting took place because Jermar thought that "Owens was coming to do something to him, [Jermar] owed [Owens] ten thousand dollars, but f**k him." Jermar speculates that the jury's verdict was based on sympathy for Pye, but he has not established that Pye's testimony was inconsistent with indisputable facts or so far impeached that it was deprived of all probative value. The jury's verdict was not against the great weight of the evidence.

### III. DOCKET NO. 316473: DUANE THOMAS'S APPEAL

### A. APPELLATE COUNSEL'S ISSUES

### 1. EVIDENCE OF THREATS

Defendant Thomas argues that the trial court erred in allowing evidence of threats against Pye when there was no evidence connecting those threats to Thomas. Thomas also argues that the trial court erred in allowing the officer in charge to offer testimony describing police assistance to Pye and his family. Although Thomas objected to the evidence of threats, he did not object to the evidence of the police assistance to Pye and his family, leaving that issue unpreserved. We review preserved evidentiary decisions for an abuse of discretion, *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008), but review unpreserved claims of evidentiary error for plain error affecting substantial rights, *Carines*, 460 Mich at 761-767.

Thomas correctly observes that evidence of threats against a witness is not admissible to show a defendant's consciousness of guilt unless there is a connection between the threats and the defendant. *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996); *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982). In this case, however, the evidence of threats

against Pye was not offered to show consciousness of guilt, but rather for its relevancy to Pye's credibility. Specifically, the evidence was relevant to explain Pye's delay or hesitation in coming forward to cooperate with the police and identify the suspects. See MRE 402. Moreover, we disagree with Thomas's suggestion that the evidence should have been excluded because it was unduly prejudicial. Under MRE 403, the trial court has discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Because the testimony was not offered to show Thomas's consciousness of guilt, and because Pye did not offer any details about the source of the threats or suggest that they were attributable to Thomas, any claim of prejudice is unfounded. Accordingly, the trial court did not abuse its discretion in admitting the evidence of the threats against Pye.

We also conclude that the evidence of the police assistance to Pye and his family did not constitute plain error. The testimony indicated that Pye was given financial and other assistance to help him and his family temporarily relocate until they could move out of the area. Evidence of benefits received by a witness is relevant to the witness's credibility, and it is not improper for the prosecutor to elicit such evidence so as not to appear to be hiding that information. See *State v Harris*, 521 NW2d 348, 351-352 (Minn, 1994). There is no indication that the prosecutor attempted to exploit the evidence for an improper purpose, such as by suggesting that Thomas was directly responsible for the threats against Pye. And considering that multiple defendants had been charged in the matter, there was no basis for the jury to attribute any threats specifically to Thomas.

Thomas also argues that defense counsel was ineffective for not objecting to the testimony or requesting an instruction advising the jury that Thomas was not responsible for any threats and that the evidence could not be considered to show Thomas's consciousness of guilt. Because there was no error in admitting the evidence in question, defense counsel cannot be considered ineffective for failing to object. *Ericksen*, 288 Mich App at 201. Further, because there was no suggestion that Thomas was connected to the threats, and because the evidence of threats was not offered to show consciousness of guilt, it was not unreasonable for counsel to believe that a cautionary instruction from the trial court was unnecessary. We reject Thomas's claim of ineffective assistance of counsel in this regard.

## 2. TELEPHONE RECORDS

Thomas next argues that the trial court erred by denying his mid-trial request for production of Pye's telephone records. We disagree. Thomas failed to show that the evidence was relevant to an issue at trial. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Thomas sought the telephone records to determine whether Pye actually called 911 or called the police, as he claimed in his testimony. However, it was undisputed that Pye had made at least one 911 call after the shooting, the content of which was played for the jury; Pye admitted that it was his voice on the recording. It was also undisputed that Pye had contacted the police and eventually agreed to cooperate with the investigation of the shooting. The trial court did not abuse its discretion in concluding that Thomas failed to identify a relevant purpose for production of Pye's telephone records. *Unger*, 278 Mich App at 216.

## 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Thomas argues that defense counsel was ineffective for eliciting from Pye testimony that referred to Thomas as a "jacker." The challenged testimony was presented in the context of the following exchange:

*Q. [By Thomas's counsel:]* Okay. Would I be correct if I said that you really didn't believe that Mr. Thomas was the one that carried a gun?

*A.* Say that again. I'm not understanding the question.

*Q.* Did Mr. Thomas carry a gun?

*A.* Yeah, he was a jacker, he jack people, he kept a gun.

　　*THE COURT:* Please, sir. Just answer the question.

　　*THE WITNESS:* Oh, I'm sorry. Yes, yes.

*BY MR. KINNEY:*

*Q.* He kept a gun?

*A.* Yes.

*Q.* Okay. And you told the police what you just told us?

*A.* About what?

*Q.* What you just told us about him carrying a gun?

*A.* Yeah.

Counsel was attempting to clarify whether Pye had reason to believe that a gun he observed a week before the shooting was Thomas's weapon. Counsel's question only required a yes or no response. It is not apparent that counsel should have anticipated that Pye would additionally volunteer that Thomas was a "jacker." Because the response was unsolicited, brief, and isolated, it is unlikely that the trial court would have granted a mistrial had counsel requested one. Unresponsive, volunteered answers to proper questions are generally not grounds for a mistrial. *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled on other grounds in *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007). Although counsel could have requested that Pye's unresponsive answer be stricken, counsel may have preferred to leave the comment alone, rather than objecting and drawing further attention to it, particularly where the trial court had already interjected and instructed Pye to just answer the question. See *Unger*, 278 Mich App at 242. Under the circumstances, Thomas has not overcome the presumption that counsel's failure to request that the response be stricken was unsound strategy. *Tommolino*, 187 Mich App at 17. Thomas has not established that defense counsel was ineffective.

B. THOMAS'S SUPPLEMENTAL BRIEF

Thomas raises several additional issues in a supplemental brief filed *in propria persona*, none of which has merit.

Thomas first argues that the prosecutor made misstatements of fact during opening statement and closing argument. Because there were no objections to the challenged remarks, our review of this issue is limited to plain error affecting Thomas's substantial rights. *Abraham*, 256 Mich App at 274-275. "A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but [he] is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). The record does not support Thomas's claim that the prosecutor intentionally misstated facts. The prosecutor was explaining how he believed the shooting occurred. His comments were supported by the evidence and reasonable inferences drawn from that evidence, specifically Pye's eyewitness testimony regarding the location of the shooters and the type of weapon possessed by each shooter, as well as the ballistics and medical evidence regarding the location and nature of the victims' wounds. Thus, there was no plain error. Further, the trial court instructed the jury that statements by the attorneys are not evidence. The trial court's instruction was sufficient to cure any perceived prejudice and to protect Thomas's substantial rights.

Thomas also raises several claims of ineffective assistance of counsel. Thomas first argues that counsel was ineffective for not cross-examining the medical examiner regarding evidence of close-range firing. The questioning of witnesses is presumed to be a matter of trial strategy. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Thomas does not explain the significance of this issue or how it was likely to affect the jury's verdict. Further, he does not identify any basis for challenging the medical examiner's conclusion that there was no evidence of close-range firing. Accordingly, he has failed to establish either that defense counsel's questioning was deficient or that there is a reasonable probability that the outcome of the trial would have been different if counsel had pursued this subject on cross-examination.

Thomas also argues that defense counsel was ineffective for not cross-examining Officer Maye about notes that Pye allegedly made, but later could not find. Thomas has not provided any reason for believing that cross-examination on this subject would have been helpful to his case. Pye's testimony at trial was based on his personal recollection of the events, not the notes. Thomas has not provided any basis for concluding that there is a reasonable probability that defense counsel's failure to pursue this issue on cross-examination affected the outcome of the trial.

Thomas further asserts that defense counsel was ineffective for not offering a 911 recording to establish that one of the callers saw Thomas on the street corner, but did not see Thomas go to Omar Johnson's house. Again, Thomas fails to explain the significance of this evidence. Pye had testified that Thomas went to Omar Johnson's house after the shooting, and then left the house and walked down the street. The police found a blood trial, consistent with Thomas's DNA profile, that led from Omar Johnson's house to the street corner. In light of the evidence that Thomas walked down the street after leaving Omar Johnson's house, there is no reasonable probability that the result of the trial would have been different if counsel had

presented evidence that a 911 caller reported seeing Thomas on the street corner, but did not see him going to Omar Johnson's house.

Thomas also claims that defense counsel was ineffective for not cross-examining Aaron Hill, a defense witness called by Jermar, to establish that Pye, Hill, and "Buddah" (Brian Thomas) were all related and that Hill never saw Thomas with a gun. Hill testified that he encountered Thomas after Thomas had been shot, and Hill helped Thomas lie down on the grass to await help. In light of the testimony that Thomas first went to Omar Johnson's house after the shooting, before walking down the street, evidence that Thomas did not have a gun when Hill encountered him would not likely have affected the jury's verdict. Further, Hill did identify Brian Thomas as his uncle. Although Hill did not indicate that he was related to Pye, Thomas fails to explain how that would have been significant. There is no basis for concluding that Thomas was prejudiced by counsel's failure to establish that fact.

Next, we find no merit in Thomas's argument that the trial court failed to properly respond to the jury's request to review evidence. The trial court advised the jury that it could not provide the requested information regarding the caliber of the "collector gun" possessed by Jermar because no evidence on that subject had been presented. Thomas does not contend otherwise. Because there was no evidence on that subject, there was nothing to provide. Further, the record indicates that the trial court appropriately responded to the jury's request for findings by the medical examiner by furnishing the medical examiner's exhibits. Thomas has not demonstrated that this was insufficient to satisfy the jury's request. Indeed, the fact that the jury did not make any additional requests after receiving the exhibits indicates that it was satisfied with what it received. Accordingly, no error has been shown.

Thomas next argues that police misconduct denied him a fair trial. The essence of this argument is that the police testimony was not credible. The credibility of the police witnesses was for the jury to resolve, and this Court will not resolve it anew. *John Williams, Jr*, 268 Mich App at 419. Thomas has not identified any cognizable basis for relief with respect to this issue.

For his last claim of error, Thomas merely asserts, "Right to remain silent. *People v Bobo*, 390 Mich 355; 212 NW2d 190 (1973)." An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claim. *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009). Because Thomas does not offer any argument explaining how his right to remain silent was violated, this issue has been abandoned. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001).

We do note, however, that Officer Maye stated, "[W]hen I went to talk to them once they arrested them they requested attorneys." The trial court immediately intervened and advised the jury that once a person is arrested, he or she has "the absolute constitution[al] right to remain silent so if the police try to talk to them they don't have to say anything, so you can't hold that against anyone." Assuming that Officer Maye's testimony is the basis for this claim of error, the trial court's instruction immediately after the objectionable response was sufficient to cure any prejudice and to protect Thomas's substantial rights. Accordingly, this unpreserved issue does not require reversal.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause